David Morris Clayman / דוד משה קליימן / אדם דוד קליימן, *Pro se*



FILED BY ____ D.C.

AUG 04 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **David Morris Clayman** ( / אדם דוד / דוד משה קליימן),<br>Plaintiffs,<br><br>vs.<br><br>**SCOTT BESSENT**, in his official capacity as<br>Secretary of the Treasury;<br>**UNITED STATES OF AMERICA**;<br>**CONGRESS OF THE UNITED STATES**;<br>**JEROME H. POWELL**, in his official capacity as<br>Chair of the Federal Reserve; and<br>**GENE L. DODARO**, in his official capacity as<br>Comptroller General,<br>**BRENDAN CARR**, in his official capacity as Chair of the Federal Communications Commission,<br>Defendants | **CASE NO. 9:25-CV-80890-WM**<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DEEM PLAINTIFF A VEXATIOUS LITIGANT AND ENJOIN FURTHER FILINGS** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DEEM PLAINTIFF A VEXATIOUS LITIGANT AND ENJOIN FURTHER FILINGS

Plaintiff David Morris Clayman respectfully submits this Response in Opposition to Defendants'

Motion to Deem Plaintiff a Vexatious Litigant and Enjoin Further Filings in the Southern District

of Florida. The motion is both procedurally premature and substantively unsupported, and it

seeks a drastic and disfavored remedy that is neither warranted by the facts nor consistent with binding Eleventh Circuit precedent.

## I. INTRODUCTION

Defendants' Motion seeks to silence a pro se civil rights plaintiff who has filed three factually and legally distinct cases over six months, each grounded in serious First Amendment, RFRA, constitutional, or statutory claims. Their motion makes sweeping accusations of frivolousness while glossing over key procedural facts, exaggerating the burden on government counsel, and overlooking the clear public interest dimensions of the issues raised.

Plaintiff does not dispute that he is a passionate advocate for policy reform, particularly in the domains of election integrity, religious freedom, and organ donation incentives. But the mere fact that he is persistent, pro se, and creative does not render his efforts vexatious. Nor does the government cite any case where fewer than four dismissed actions by a non-incarcerated, non-repetitive filer resulted in a pre-filing injunction. This motion is thus both unprecedented and chilling.

## II. LEGAL STANDARD

Federal courts possess "inherent power to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions," including enjoining litigants whose filings are abusive. *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986). However, such relief is "an extreme remedy" and must be used "sparingly." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277,

1295 (11th Cir. 2002).

To justify a pre-filing injunction, courts consider:

1. A pattern of vexatious, harassing, or duplicative litigation;

2. Lack of good faith or intent to harass;

3. Lack of legal merit in claims;

4. Needless burden on the courts or opposing parties; and

5. Lack of effective alternative remedies.

*Jean-Baptiste v. U.S. Dep't of Justice*, No. 23-cv-22531, 2023 WL 9013864, at *4 (S.D. Fla. Nov. 30, 2023).

---

## III. FACTUAL REBUTTAL OF DEFENDANTS' CHARACTERIZATIONS

**A. Plaintiff's First Filing Was Unconventional, but Subsequent Filings Show Clear Progress**

Plaintiff acknowledges that his earliest federal filings—particularly the initial Complaint in *Clayman v. Trump*, No. 25-cv-60120—were digressive, unconventional, and at times stylistically imprecise or structurally incomplete. This is an expected consequence of any pro se litigant learning to navigate the technical rigors of federal litigation. However, since receiving feedback from the Honorable Judge Smith and the United States Attorney's Office in that case which was prejudicially dismissed, Plaintiff's filings have improved rapidly in clarity, structure, and legal discipline.

Defendants' motion elides this progression and instead advances a distorted narrative that Plaintiff is a repeat abuser of the judicial process, relying heavily on conclusory language and

factual mischaracterizations.

**B. The Organ Donation Case Was Dismissed *Without Prejudice* and *With Leave to Reinstate***

Defendants claim Plaintiff's second case—*Clayman v. United States*, No. 25-cv-60447 (S.D. Fla. 2025)—was "patently frivolous," and that Plaintiff "could not possibly succeed" on his claims. Yet this case was not dismissed with prejudice, nor was it dismissed on Rule 12(b)(6) grounds. Rather, the Honorable Judge Rosenberg dismissed the Complaint *without prejudice* and *with leave to reinstate*, explicitly leaving the door open for Plaintiff to refile should certain factual predicates ripen.

This is a critical and seemingly deliberate and willful factual omission by the Assistant US Attorney. Far from declaring the claims hopeless or abusive, Judge Rosenberg implicitly recognized that Plaintiff might have standing in the future, contingent on Plaintiff's medical condition and readiness to personally donate a kidney. Defendants' assertion that the Plaintiff could "not possibly succeed" on those claims is, respectfully, contrary to the actual procedural record.

This patently and obviously false claim by the AUSA that "Plaintiff brought the following actions, both of which were dismissed with prejudice" seems deliberately and willfully misleading rather than a mistaken memory or mistake because when she lists the cases, she details the first as "motion to dismiss with prejudice granted June 2, 2025" [accurate] and the second differently as simply "dismissed July 2, 2025" [misleading, probably deliberately incomplete] without reasserting "with prejudice" symmetrically as you would expect she would if she really genuinely thought they were both prejudicially dismissed, or by showing honesty and rigor by stating and detailing that second dismissal as having occurred "without prejudice and

with leave to reinstate". My inclination is to think that AUSA Thompson isn't chiefly interested here in informing the Honorable Magistrate Judge Matthewman of how I'm performing so far as a Pro se Plaintiff; she's chiefly interested in shutting my religious and civic expression down, even if her attempt to do so requires knowingly misleading the Court.

Is regular civic participation in the federal courts now reserved exclusively for licensed attorneys? The Constitution and federal statutes contain no language suggesting that the right to bring frequent or significant claims under Article III is limited to members of the Bar. The cases I've filed do not reflect a pattern of harassment or abuse, but rather a backlog of sincerely held claims and constitutional grievances that I was unable to bring earlier due to circumstances beyond my control. My recent filings represent a good-faith effort to resolve those claims through lawful channels, as any citizen is entitled to do.

**C. One Dismissed Case Does Not Establish a Vexatious Pattern**

Of the three federal actions filed by Plaintiff in 2025:

- One (*Trump*) was dismissed with prejudice.
- One (*Organ Donation*) was dismissed *without* prejudice and remains viable for refiling as soon as my standing improves.
- One (*Currency Motto/RFRA*, the instant case) is currently pending with no indication or reason to conclude that this Court has cause to find the Plaintiff's claims frivolous, as the AUSA leaps to assume.

Only *one* case—*Trump*—has been finally dismissed in a manner that could even arguably support a "frivolousness" label. This is not a pattern, and it does not meet the threshold for a pre-filing

injunction under *Riccard*, *Jean-Baptiste*, or *Procup*.

Further, all three cases involve different factual bases, different statutes, and different legal questions. This is not duplicative litigation. Nor is it litigation aimed at harassment or delay. Rather, Plaintiff is attempting, in earnest and good faith, to test extremely important and urgent legal questions that have not previously been adjudicated in this Circuit or, in many cases, anywhere in the federal judiciary.

**D. Dismissals Based on Standing Do Not Imply Frivolity**

All dismissals to date—including in *Trump* and *Organ Donation*—were based on Article III standing doctrines. But as courts have repeatedly acknowledged, standing law is a highly fact-specific and evolving area, often turning on nuanced distinctions about injury, redressability, and causation. Reasonable jurists routinely disagree on standing, and even Supreme Court precedent in this area shifts frequently. The notion that a standing-based dismissal renders a claim inherently frivolous misstates the law.

As a pro se litigant, Plaintiff cannot be expected to master the complex art of pleading Article III standing on his first or even second attempt. Courts are expected to apply some leniency to pro se pleadings, particularly when the underlying claims involve fundamental rights such as religious freedom.

**E. Each Case Raised Urgent and Substantial Public Interest Questions Warranting Requests for Expedited Consideration**

Defendants criticize Plaintiff's repeated use of motions for expedited consideration, but omit the fact that each request was grounded in legitimate public interest urgency and, in multiple

instances, time-sensitive constitutional or life-preserving stakes.

- **In the *Trump* case**, Plaintiff sought clarity on the applicability of 10 U.S.C. § 1253 to the Commander-in-Chief, a question with real implications for eligibility and military oversight prior to the 2025 presidential inauguration.

- **In the *Organ Donation* case**, Plaintiff proposed an ethically guided religious incentive system for organ donation, with the potential to shift the national supply curve and save up to 13 American lives daily.

- **In the present RFRA currency case**, Plaintiff pleads ongoing religious harm and a rapidly approaching civic milestone—the Quarter-Millennial Anniversary of the United States—which may be the last and best opportunity to implement inclusive redesigns or rebrandings of U.S. currency aligned with RFRA's mandate for least-restrictive means.

Far from vexatious, Plaintiff's motions for expedited review were responsible, timely, and targeted at emergencies meriting judicial attention. One should instead ask why the Government imagines these questions the Plaintiff has raised should be slow-walked or kept in the extremely slow normal case queue.

**F. Requests for Expedited Consideration Are Permitted by Rule and Do Not Evidence Vexatiousness**

Federal Rule of Civil Procedure 1 charges both the Court and the parties—including pro se litigants—with ensuring the "just, speedy, and inexpensive determination of every action and proceeding." Where the plaintiff can show that time-sensitive harms are occurring or that delay may render judicial relief meaningless, requests for expedited review are not only appropriate—they are prudent and affirmatively encouraged by the Rule's spirit.

At no point has Plaintiff misused these motions to avoid procedural obligations or to impose

surprise on the Defendants. In every case cited:

- The motion was filed transparently and promptly;
- The urgency was explained with specific factual or legal justifications;
- No court has sanctioned, admonished, or even warned Plaintiff for the act of requesting expedited consideration.

The Defendants' attempt to weaponize Rule 7 motions for expedited relief into evidence of "vexatiousness" is both unsupported by precedent and logically inconsistent with the judicial goal of efficiently resolving disputes where time is of the essence. Courts routinely consider and grant such motions when merited. Their mere filing cannot be recast as misconduct simply because a pro se plaintiff seeks swift resolution to urgent matters.

**G. Many Procedural Missteps Cited by Defendants Stem from Systemic Disadvantages and Honest Misunderstandings, Not Vexatious Intent**

Defendants characterize several of my procedural filings as "improper" or "frivolous," but a closer and more charitable examination reveals that nearly all of the issues they complain of arise from two underlying and remediable conditions: (1) my ongoing lack of electronic filing privileges, and (2) my past lack of awareness—now corrected—that the Federal Rules of Civil Procedure allow pro se plaintiffs to amend their complaint as a matter of right within 21 days of initial filing or within 21 days of a responsive motion such as a motion to dismiss.

On the first point: I remain without access to the Court's CM/ECF electronic filing system. I have filed appropriate requests for such access, yet to date, no ruling has been made on those motions. In the meantime, I have been constrained to submit all filings by paper mail. The government appears unwilling or unable to acknowledge the procedural delays, uncertainty, and logistical

complexity that this imposes—especially when filings are time-sensitive or when clerical errors obscure timely efforts from appearing promptly on the docket.

On the second point: my earlier misunderstanding of Rule 15(a)(1) has now been corrected. At the time, I did not fully appreciate that I retained the right to amend my Complaint by right either within 21 days of service or within 21 days of receiving a motion to dismiss. That rule, had I known it clearly, would have informed and streamlined the timing of certain motions and filings. But ignorance of a procedural right is not vexatiousness—it is a curable and non-malicious error common among pro se litigants.

As to specific filings criticized by Defendants:

- **The Motion to File Address and Identity Under Seal** was submitted when I was a private citizen bringing claims implicating a powerful and, at times, retaliatory public figure—Donald J. Trump—who has shown a pattern of vindictive litigation. That motion was a reasonable protective measure for a pro se litigant and not filed in bad faith. When my circumstances changed—particularly as I recognized the need to declare a run for public office to advocate for life-preserving and constitutional reforms—I immediately filed a **Motion to Unmask**, reversing my prior position with full transparency. This sequence does not suggest abuse of the Court's resources; it demonstrates responsiveness to changing circumstances and an earnest effort to balance civic duties with personal risk.

- **The Motion to Enter Default Judgment** was submitted only after I had served process on all parties and mailed proof of service to the Court. Although docketing anomalies may have obscured this fact, I repeatedly submitted evidence—including certified mail tracking and physical documentation (see 0:25-cv-60120-RS DE 22, DE 23, DE 26)—demonstrating timely service that the US Attorney stubbornly continues denying. Assistant U.S. Attorney Thompson's

insistence that service was never completed reflects either an obstinate misreading of the record or more generously a reluctance to acknowledge the unique challenges faced by paper-based filers who depend on the Clerk's Office to receive and headline our filings in docket entries correctly. I served process on the last defendant on February 4, 2025. The government failed to respond within the prescribed deadline by April 7, 2025, so after waiting generously for another ten days I filed a Motion for Default Judgment on April 17, 2025 and the US Attorney only finally responded around fifteen days past time on April 22 and April 23. My request for default was not only procedurally available but substantively justified. The US Attorney must know this but continues obstinately mischaracterizing the plain record.

- In **Clayman v. United States** (the "Organ Donation" case), Defendants again mischaracterize the procedural record. They suggest that my motion for electronic filing privileges was submitted post-dismissal, when in fact the motion was mailed before the Complaint was dismissed. It arrived late due to standard postal delays—something beyond my control. This again highlights the inherent disadvantage faced by non-electronic filers and underscores the need for flexibility and good faith reading of intent, rather than the presumption of vexatiousness.

More broadly, the AUSA's litany of docket entries is presented as if the mere existence of multiple filings constitutes an abuse of the court process. But federal litigation—especially constitutional litigation—often requires a range of preliminary motions and clarifications. None of the filings she cites are atypical for a complex civil rights case. To imply that such filings alone justify a pre-filing injunction is to suggest that the Department of Justice should be immune from legal accountability unless a plaintiff's conduct is perfectly streamlined and procedurally flawless from day one.

Such a posture ignores the asymmetric burdens placed on pro se filers—especially those litigating serious First Amendment and RFRA claims under resource constraints—and sets a dangerous precedent of procedural gatekeeping without consideration for structural disadvantage.

**H. Plaintiff's Email to the Government Was a Procedural Courtesy, Not a Sign of Frivolity or Strategic Retreat**

Defendants have selectively quoted from an email I sent to AUSA Thompson on July 28, 2025, in an effort to imply that I was expecting to amend a meritless Complaint in response to inevitable dismissal. This inference is misplaced and mischaracterizes both the content and intent of my communication.

In that message—which I respectfully titled "Clayman v. Bessant – AUSA Assignment and Scheduling"—I notified the Government that, although I had initially planned to file a by-right First Amended Complaint shortly after service, I had decided to postpone that filing. This was not due to any belief that the case lacked merit or was procedurally deficient. Rather, I had realized that filing post-Motion to Dismiss would allow me to make more efficient, targeted amendments—addressing any procedural criticisms and factual misunderstandings in the Government's own language—rather than risk wasting judicial and personal resources submitting redundant, preemptive edits.

This is a sound litigation strategy—indeed, one often advised in pro se guidance and civil procedure treatises—and was made all the more necessary by my lack of electronic filing privileges, which prevents me from amending swiftly or cheaply. The suggestion that postponing an amendment until after reviewing a Government Motion to Dismiss evidences frivolousness is

an overreach. It is not "vexatious" to tailor one's amendments based on anticipated government opposition. In fact, this approach reflects an efficient, responsive use of litigation tools.

Moreover, my comment that I "anticipated" a Motion to Dismiss from AUSA Thompson reflects an unfortunate pattern I have come to expect based on experience with this particular office. Regardless of the legal merits or urgency of the claims I present—even when grounded in unambiguous First Amendment and RFRA violations—I have observed that the U.S. Attorney's Office defaults reflexively to dismissal. Indeed, it often resists even procedural accommodations or factual clarifications, preferring an adversarial posture over substantive engagement.

As my process of service in this case demonstrates, which included the attached letter to all defendants in Appendix A, I gave early, written notice to Defendants about the changes I planned to make. That email was a courtesy to their office, not an admission of error or defect. I was transparent, responsible, and timely in my communication—attributes which stand in stark contrast to the narrative Defendants are now attempting to construct.

Finally, I must respectfully note that AUSA Thompson's Motion to Deem Vexatious appears not to have been motivated by concern for judicial efficiency, but rather by an animus toward my persistent exercise of religious and civic rights in federal court. The fact that she sought to reframe a professional scheduling email as evidence of frivolity only underscores the overreach of this Motion and the need for careful judicial scrutiny of the motives and factual accuracy behind it at the US Attorney's Office.

**I. Selective Use of the "Vexatious Litigant" Label Risks Undermining Equal Justice Under**

**Law**

In assessing whether I should be labeled a "vexatious litigant," this Court cannot and should not ignore the troubling asymmetry in how such labels are applied—or, more precisely, withheld—when it comes to far more prolific and obstructive litigants.

Consider the litigation history of Donald J. Trump and his attorney Alina Habba, particularly before this very Court. In *Trump v. Hillary Clinton et al.*, 22-cv-14102-MIDDLEBROOKS (S.D. Fla.), Judge Donald M. Middlebrooks issued a detailed sanctions order in January 2023, concluding that Trump and Habba had engaged in "a pattern of abuse of the courts for political purposes." In that case, they brought a sprawling and legally incoherent lawsuit against 31 defendants, including political rivals, law enforcement officials, and public servants. Judge Middlebrooks wrote:

"Mr. Trump is a prolific and sophisticated litigant who is repeatedly using the courts to seek revenge on political adversaries. He is the mastermind of strategic abuse of the judicial process... No one is above the law."

Yet even with this language—and a significant monetary sanctions order—Judge Middlebrooks stopped short of formally declaring Mr. Trump a vexatious litigant. No pre-filing injunction was imposed, and no order was entered requiring Trump or his attorneys to seek leave of court before initiating further actions.

If such a reticent, careful, and well-documented judicial finding was insufficient to brand a former President and his legal team "vexatious" in perpetuity, then the threshold for such a designation must be similarly high for a pro se civil rights plaintiff who has filed only three actions—one of which remains active, and another of which was dismissed without prejudice and

with leave to reinstate.

Indeed, to grant Defendants' Motion here while declining to impose identical or greater sanctions on litigants like Mr. Trump would reflect an unequal application of justice. Courts cannot allow political notoriety or prosecutorial convenience to influence who is labeled as "abusive." Equal justice under law demands that vexatiousness be determined by objective patterns of bad faith, duplication, or harassment—not by the perceived eccentricity or ideological inconvenience of a pro se plaintiff's claims.

If this Court believes that I should be labeled a vexatious litigant, then in the interest of impartiality and judicial consistency, it should also issue a corresponding opinion formally labeling Donald J. Trump and his litigation strategy as vexatious and enjoining *his* future filings under the same principles—something no court has yet had the courage to do explicitly, despite ample opportunity and evidence.

Alternatively, if this Court, like Judge Middlebrooks, believes that such a designation should be applied only with great caution and in exceptional circumstances, then that principle must extend to all litigants—regardless of fame, power, or pro se status. To do otherwise would be to abandon the judicial oath of fairness "without respect to persons."

**J. Plaintiff Respectfully Requests an Apology from the US Attorney and Reconsideration of Their Conduct**

Plaintiff respectfully asks this Court to take notice not only of the factual and legal insufficiency of Defendants' Motion, but also of the personal and professional harm that such a premature and unsupported filing can inflict on a pro se civil rights litigant with limited resources and without

electronic filing privileges.

This Motion to Deem Vexatious—filed without meaningful engagement on the merits, and premised in part on facially incorrect or misleading characterizations of Plaintiff's litigation history—has caused substantial undue stress, anxiety, and distraction. The time and effort required to rebut this Motion has diverted critical energy from Plaintiff's professional obligations and ongoing constitutional claims, imposing an unnecessary burden far beyond what should be expected in early-stage motion practice.

This Motion was not simply overzealous—it was, in several places, demonstrably inaccurate. Defendants' failure to mention that one of Plaintiff's prior cases was dismissed *without prejudice* and *with leave to reinstate* is not a small oversight. It is a severe factual omission with direct bearing on the central claim of vexatiousness. Likewise, the framing of Plaintiff's email to AUSA Thompson—cited as if it evidences bad faith—ignores both the courtesy and transparency of that communication.

Given this, Plaintiff respectfully requests a formal acknowledgment from the U.S. Attorney's Office that the Motion was filed prematurely and without full and fair representation of the facts. Given the totality of the circumstances, Plaintiff would welcome and appreciate a clear apology for the distress and reputational harm caused by Defendants' attempt to label him as vexatious at such an early and unwarranted stage of this proceeding.

Regardless of whether such an apology is offered, Plaintiff urges this Court to recognize that the invocation of vexatiousness in this context is not only unsupported by the record but slows down this Court's adjudication of the urgent and important matters at hand and risks chilling the right of ordinary citizens to seek meaningful redress through the courts—here especially in matters of

religious liberty, public policy reform, and constitutional grievance.

Still working to preserve life and death, and the *G*-given right to religious liberty,

s/Plaintiff David Clayman, Currently *Pro se*
7930 Palacio Del Mar Drive
Boca Raton, FL 33433-4148
+1 (321) 252 - 9626
david@clayman.org
david@harmlesshands.org

See **APPENDIX A:** *Printed Letter to All Defendants At Time of Process of Service Detailing Original Plans for Minor Amendments to Initial Complaint*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this Monday, the 4th day of August, 2025, I mailed a copy of this document to the Court via certified mail and electronically served a copy of this response to the new and old opposing counsel on the case.

*/s/ David M. Clayman*
Pro Se Plaintiff

## Appendix A

**Printed letter sent to all defendants along with and at time of process of service detailing original plans for minor amendments to Initial Complaint.**

# David Clayman

—

**David Clayman**
7930 Palacio Del Mar Drive
Boca Raton, FL 33433-4148
david@clayman.org
321.CLAYMAN
321.252.9626

21 JULY 2025

**Actually Protecting The National Motto – "In G-d We Trust"**

**Dear Defendant,**

The initial complaint that you're receiving here is a culmination of 10 years of frustration with the Government's failure to protect the sacred Name of G-d.  Not all Jews believe that the Name of G-d in English needs to be protected as sacred, but many of us do consistently hyphenate the English Name of G-d, and since I realized in 2014 that G-d's Name was being destroyed on currency I have been forced to refrain from using American cash for any transactions, except in the case where life is immediately at stake (under the principle of pikuach nefesh).

But I'm not writing this letter to relitigate the topics in the complaint. I just wanted to highlight a few things so we're on the same page.

A) **Check PACER for Updated Filings –** There may be updated documents already you can find immediately by logging into PACER and searching for the case number (Case 9:25-cv-80890-WM) to review the full current docket.

B) **Amended Complaint Upcoming –** I plan to file an amended complaint soon within the 21 day revision window. There are some flaws in this initial version. It's a little light on receipts and photographs evidencing the substantial burden I'm under; I have 10 years of receipts and photographs scattered here and there and I haven't reproduced any of that in the complaint yet. So I'll add an appendix with a little more documentation of some of the times I've been screwed for not being able to use cash. That Amended Complaint will not be exhaustingly and expensively served to all seven Government defendants via paper; it will be available in the Court docket the moment it's filed, and as long as you sign up for alerts on receipt of this original Initial Complaint you should get the Amended copy immediately.

C) **Every Crisis is an Opportunity –** I want to emphasize that I understand I do not have an airtight *legal* claim to force-function the United States Government to change the overall name of our currency from "dollar" to something more meaningful through naming contest that makes the most of teachable moments in commercial exchange, like *Trust, CALM, QALM, Seeds, Talents,* etc. for the Quarter-millenial 250th Birthday of the USA.  I'm making the argument that that's the least restrictive and most effective means of attaining your Governmental objectives, but on that retitling and amplification of the essence of whatever motto we choose I can only lead a horse to water; I can't make you drink. But I do believe I have an incredibly strong, legally airtight rationale for forcing you to edit the current National Motto as used on our secular destructible and frequently unceremoniously destroyed documents, in

light of Talmudic Tractate Rosh Hashanah 18B4, as referenced in the complaint and below in point (D).

D) **Will Insert Better Copy of the Tractate in Amended Complaint –** I'd like to include a cleaner, clearer print of Rosh Hashanah 18B4 in the Amended Complaint, through copying the text available through Sefaria, the most relevant portion of which is reproduced here:

"מוֹתִיב רַב אַחָא בַּר הוּנָא: בִּתְלָתָא בְּתִשְׁרֵי בְּטֵילַת אַדְכָּרְתָּא מִן שְׁטָרַיָּיא. שֶׁגָּזְרָה מַלְכוּת יָוָן גְּזֵרָה שֶׁלֹּא לְהַזְכִּיר שֵׁם שָׁמַיִם עַל פִּיהֶם, וּכְשֶׁגָּבְרָה מַלְכוּת חַשְׁמוֹנַאי וְנִצְּחוּם הִתְקִינוּ שֶׁיְּהוּ מַזְכִּירִין שֵׁם שָׁמַיִם אֲפִילּוּ בִּשְׁטָרוֹת. וְכָךְ הָיוּ כּוֹתְבִים: בִּשְׁנַת כָּךְ וְכָךְ לְיוֹחָנָן כֹּהֵן גָּדוֹל לְ-אֵ-ל עֶלְיוֹן."

**Rav Aḥa bar Huna raised an objection:** It is stated in *Megillat Ta'anit*: **On the third of Tishrei the** ordinance requiring the **mention** of God's name **in** legal **documents was abolished,** and on that day fasting is forbidden. **For the kingdom of Greece had issued a decree** against the Jews **forbidding them to mention the name of Heaven on their lips. When the Hasmonean kingdom became strong and defeated** the Greeks, **they instituted that people should mention the name of Heaven even in their** legal **documents. And therefore they would write: In year such and such of Yoḥanan the High Priest of the G-d Most High.**

"וּכְשֶׁשָּׁמְעוּ חֲכָמִים בַּדָּבָר, אָמְרוּ: לְמָחָר זֶה פּוֹרֵעַ אֶת חוֹבוֹ וְנִמְצָא שְׁטָר מוּטָּל בָּאַשְׁפָּה, וּבִיטְּלוּם, וְאוֹתוֹ הַיּוֹם עֲשָׂאוּהוּ יוֹם טוֹב."

**And when the Sages heard about this they said: Tomorrow this one,** the borrower, **will repay his debt,** the lender will no longer need to save the loan document, **the document will be cast on a dunghill,** and the name of Heaven written there will come to disgrace.

https://www.sefaria.org/Rosh_Hashanah.18b.15?lang=bi&with=all&lang2=en

E) **Minor Adjustments Upcoming in Amended Complaint –** There are some minor adjustments in the text of the complaint I want to complete. For instance, I dumped an unedited one-shot copy of ChatGPT's efforts at various backronyms for **"CALM"** currency, and some of the suggestions it made are noisy misfits that humans wouldn't have proposed given a currency-related design brief and wouldn't use in daily economic practice, daily heuristics, or daily marketing. I want to go through and cross some of those out so they're not a distraction and the deep value and impact of picking a rich, acronym-exploding, creative, multivalent title like **CALM** are more clearly and immediately apparent, with very high signal to noise ratio when initially framed to a reviewing audience.

F) **Let's Talk and Video Conference ASAP –** I'm a very approachable person and I'd be happy to conference with any of you at any time to discuss this and work out an acceptable solution, whether that solution is big (retitling and redesigning the currency) or small (just amending the motto to "In Good We Trust" or "In G-d We Trust" without taking of this

opportunity to overhaul our currency designs).  I ask for many more things by judgment of the Court in the Initial and upcoming Amended Complaint, but that's the crux of the issue.

You have my contact information in the letterhead and listed in the complaint. Please use it to call or write me to ask questions and provide preliminary or final answers. This need not be an adversarial process. I'd much rather partner collaboratively with you on achieving a civically sacred, but not overly divinely sacred,  **US Currency 2.0** on or before July 4, 2026.

I'm looking forward to working with you. Getting this finished is long overdue.


Sincerely,

**David Clayman**