# [Proposed] Motion for Appointment of Special Master Pursuant to Fed. R. Civ. P. 53

Plaintiff respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 53(a)(1)(C) and the Court's inherent authority to protect the integrity of judicial proceedings, for the appointment of a Special Master to investigate and make recommendations regarding the systemic filing of fictitious case citations and fabricated quotations originating from generative artificial intelligence ("AI") tools, including but not limited to OpenAI's ChatGPT, in pleadings submitted to federal and state courts.

## I. INTRODUCTION

In recent years, courts nationwide have been confronted with pleadings — both from represented parties and pro se litigants — that contain case citations paired with fabricated quotations or summaries that do not exist in any authentic legal source.

In multiple widely reported cases, these false quotations have been traced to outputs from generative AI products which present fabricated material in a manner indistinguishable from authentic legal authority.

This phenomenon wastes judicial resources, undermines public trust in the courts, and increases the burden on both counsel and pro se litigants who seek to proceed in good faith.

The integrity of the judicial process is a public right common to all, and this Court has the inherent authority and the procedural means to address systemic threats to that integrity.

Appointment of a Special Master will allow for a focused, impartial investigation and the development of recommendations to mitigate this growing problem.

## II. LEGAL BASIS FOR APPOINTMENT

A. Rule 53(a)(1)(C)

Rule 53 authorizes the Court to appoint a Special Master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge."

Here, the breadth and technical complexity of the issue — spanning multiple jurisdictions, involving novel AI technology, and requiring specialized fact-finding — makes it impracticable for the Court to conduct such an investigation within the constraints of ordinary judicial proceedings.

B. Inherent Authority.

Under *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991), courts possess inherent authority to fashion remedies to protect the integrity of their processes, including investigating and sanctioning abuses that impair the administration of justice. The systemic introduction of fabricated legal material from AI tools is precisely such an abuse.

## III. SCOPE OF APPOINTMENT REQUESTED

The Special Master's duties should include:

   1. Fact-Gathering

- Identify and compile reported cases in which AI-generated false legal citations or quotations have been filed in U.S. courts.

- Solicit and collect reports from judges, clerks, and court administrators regarding such filings.

2. Source Analysis

- Investigate whether and to what extent AI providers, including OpenAI, have generated or continue to generate fictitious legal material in a manner likely to be relied upon in court filings.

- Assess adequacy of safeguards, disclaimers, and "legal mode" or equivalent protective measures.

3. Recommendations

- Recommend to the Court any procedural safeguards, standing orders, or sanctions regimes necessary to deter the submission of AI-generated false legal authority.

- Propose a mechanism by which any federal or state judge may promptly report recurrent violations for possible sanctions or civil penalties.

- Suggest best practices for AI provider compliance, such as verifiable source-citation modes or prompt engineering restrictions.

4. Coordination

- Liaise with the Administrative Office of the U.S. Courts, the Judicial Conference, and relevant state court systems to share findings and harmonize approaches.

# IV. FUNDING

Pursuant to Rule 53(g)(3), Plaintiff requests that the Court direct the Special Master's compensation to be paid only from public funds, given the public nature of the harm and the institutional interest in safeguarding judicial integrity. If the Court wishes for the Plaintiff to pay for a portion of the cost as a penalty for his own unwitting gullibility, the Plaintiff asks that his liability for Special Master fees payment be comprehensively capped at maximum at the cost of an initial complaint filing in the federal courts at $405.00 USD.

# V. EXPECTED BENEFITS

The appointment will:

- Create an authoritative factual record on the prevalence and origin of AI-generated false legal material;

- Enable targeted remedies that protect all parties, including pro se litigants, from unknowing misuse of deceptive AI outputs;

- Save judicial resources by addressing the root cause of repeated litigation misconduct rather than addressing each incident in isolation.

# VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court appoint a Special Master under Rule 53 to investigate the systemic filing of fictitious legal authority from generative AI sources, to recommend sanctions or procedural reforms as appropriate, and to establish a rapid-response mechanism for judicial officers nationwide to address future occurrences not just with pleading parties but also with the producers of generative AI when appropriate.

# Legal Reasoning and Roadmap for the Proposed Motion for the Appointment of a Special Master to Investigate Generative AI Contributory Abuses in the Federal Court System

Here is OpenAI's ChatGPT GPT-5 reasoning its way with me through its contribution and legal responsibility for this phenomenon of misleading case citations, eventually landing on the recommendation of a Special Master appointment.

This is how the conversation begins. Text in speech bubbles comes from screenshots of prompts that I, the Plaintiff, submitted to ChatGPT. The rest of the text are the responses copied from GPT-5.

> In repeatedly providing false legal citations with correct case citations but incorrect hallucinated quotes to users that they then gullibly cite those quotations in-line in federal court, is ChatGPT becoming or contributing as a public nuisance to the court system?



**GPT-5 RESPONSE:**

What you're describing — a system repeatedly giving real case names but fabricated quotations that then get filed in federal court — touches several overlapping legal concepts: public nuisance, fraud on the court, and duty of care for AI providers.

Here's how it breaks down:

## 1. Public Nuisance Theory

- Traditional Definition: Public nuisance typically involves an unreasonable interference with rights common to the general public — historically things like blocking a highway, polluting air or water, or maintaining dangerous conditions in a public space.
- Application to Courts: U.S. courts have sometimes recognized "obstruction of justice" or "fraud on the court" as *harms to the public's interest in the proper administration of justice*. However, public nuisance law has rarely been applied to litigation misconduct or misinformation in filings.
- Hurdle: To call ChatGPT's conduct a *public nuisance*, you'd need to argue that:

1. The act (hallucinating quotes in plausible case citations) is recurrent and systemic.
2. It unreasonably interferes with the public's shared interest in an efficient and truthful court system.
3. The harm is public (i.e., not just one litigant's private injury).

- The novelty: U.S. public nuisance law has been stretched in opioid litigation to cover *indirect systemic harm*, so an aggressive theory could say "systematically polluting legal filings with fabricated material" is akin to a public hazard.

---

## 2. Fraud on the Court / Misrepresentation

- If a litigant files the fabricated quote believing it's true, they become the formal source of the misrepresentation, not the AI provider.

- But if a provider *knows* its system generates realistic-looking fake legal quotes that are often mistaken for genuine, and does not mitigate that risk, an argument could be made for *contributory misconduct*.
- The courts have already sanctioned lawyers for submitting ChatGPT-generated citations without verification (e.g., Mata v. Avianca, S.D.N.Y. 2023).

## 3. Contributory Liability

- In tort law, there's the idea of "aiding and abetting" or "concert of action" liability — if a party substantially assists another in committing a wrongful act.
- To apply that here, plaintiffs would need to show:
  - ChatGPT's design foreseeably leads to fabricated legal text that is indistinguishable from genuine authority.
  - The company failed to warn clearly or take reasonable precautions (e.g., legal-mode outputs that never fabricate quotes).
  - This *substantial assistance* caused harm to the integrity of judicial proceedings.

## 4. Practical Obstacles

- Section 230: Might shield OpenAI from some state-law claims related to user-provided prompts, though less so if the claim is about the *AI's own generated text*.
- No Precedent: No case has yet labeled an AI's hallucinations as a "public nuisance."

- Intervening Cause: The human lawyer's duty to verify case law before filing is a major break in causation — courts expect *attorneys* to validate every quote.

## 5. Bottom Line

- Directly: Calling ChatGPT a *public nuisance* to the court system would be novel and legally uphill, but not inconceivable in creative litigation.
- Indirectly: A stronger angle might be "knowingly supplying false information likely to be used in legal filings" — akin to selling mislabeled safety equipment — which could sound in negligent misrepresentation or contributory fraud.
- Policy Risk: If the trend continues, courts might push for rule changes or even targeted regulation of "legal research mode" in generative AI.

If you want, I can draft a legal argument outline that could plausibly support or oppose a *public nuisance* classification for ChatGPT in this scenario, showing how a litigator might present it. That would make it clear where the legal precedent is weak versus where it could be analogized from environmental or public health nuisance law.

> Yes please, please draft a legal argument outline that plausibly supports a public nuisance classification and negligent misrepresentation or contributory fraud for ChatGPT's role in supplying false quotes that seem real in legal filing drafts.

**RESPONSE:**

Here's a legal argument outline structured to plausibly support both:

1. Public nuisance classification
2. Negligent misrepresentation / contributory fraud

The goal is to make it as persuasive as possible while acknowledging doctrinal gaps and using analogous precedent.

# I. Public Nuisance Argument Outline

## A. Statement of the Claim

Plaintiff alleges that OpenAI's ChatGPT system constitutes a public nuisance by *recurrently and foreseeably generating fabricated legal quotations and case authorities that are indistinguishable from authentic ones*, thereby polluting the judicial process and causing systemic harm to the public's interest in the fair administration of justice.

## B. Elements of Public Nuisance

Most states follow Restatement (Second) of Torts § 821B:

1. Unreasonable interference with a right common to the general public.
2. Interference is *substantial* and *continuing*.
3. Defendant's conduct is a *legal cause* of the interference.

C. Application

1. Right Common to the Public
   - The public has a collective interest in a court system that operates efficiently, truthfully, and without obstruction.
   - Integrity of judicial proceedings is recognized as a public good (cf. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), treating fraud on the court as a harm to the public at large).

2. Unreasonable Interference
   - ChatGPT generates false quotations *in the format and style of genuine legal authorities*, making them plausible and difficult to detect.
   - The interference is unreasonable because safer alternatives exist: e.g., restricting quotation output unless sourced verbatim from verified databases.

3. Substantial and Continuing
   - Pattern of incidents (including the *Mata v. Avianca* case) shows the problem is not isolated.
   - Each recurrence wastes judicial resources, undermines public trust, and risks wrongful outcomes.

4. Causation
   - While attorneys are responsible for verifying citations, the hazard is designed into the product:
     - Foreseeable reliance by users (including lawyers and pro se litigants) on the AI's outputs.
     - Outputs are created without disclaimers proportionate to the danger of legal hallucination.

- Similar to cases where suppliers of defective public signage were held liable for downstream harms despite third-party misuse.

### D. Remedies Sought

- Injunctive relief requiring:
  - "Legal Mode" with only verified quotes from recognized databases.
  - Prominent warnings when unverified quotes are given.
- Abatement of the nuisance through design changes.

## II. Negligent Misrepresentation Argument Outline

### A. Statement of the Claim

Plaintiff alleges that OpenAI negligently misrepresented facts by outputting fabricated legal quotations in a manner that would cause a reasonable user to believe them accurate, leading to foreseeable and actual harm in judicial proceedings.

### B. Elements (Restatement (Second) of Torts § 552)

1. Defendant supplied false information for the guidance of others in their business or transactions.
2. Defendant failed to exercise reasonable care or competence in obtaining or communicating the information.

3. Plaintiff justifiably relied on the information.

4. Plaintiff suffered pecuniary loss as a result.

### C. Application

1. Supplying False Information
   - Fabricated quotations presented alongside genuine case names are materially false.
   - The structure of the output mimics an authoritative legal research product.
2. Failure to Exercise Reasonable Care
   - Known problem of "hallucinations" in large language models, especially in legal contexts.
   - No effective guardrails to block or clearly flag fabricated legal text.
   - Warnings are often buried or generic ("may produce inaccurate information") rather than context-specific.
3. Justifiable Reliance
   - Lawyers and pro se litigants reasonably expect that a system producing a specific case name and quote is providing genuine material, especially given its fluency and specificity.
   - Comparable to an accountant's liability for errors in financial statements relied on by a client.
4. Damages
   - Costs of sanctions, wasted court fees, reputational harm, and loss of claims or defenses.

## III. Contributory Fraud Argument Outline

### A. Statement of the Claim

Plaintiff alleges that OpenAI knowingly or recklessly aided and abetted users in committing fraud on the court by supplying fabricated legal quotations likely to be represented as authentic in filings.

### B. Elements (Restatement (Second) of Torts § 876)

1. Knowledge that the other's conduct constitutes a breach of duty.
2. Substantial assistance or encouragement to the conduct.
3. Causation of harm.

### C. Application

1. Knowledge
   - Company is aware from publicized incidents that its system generates plausible but false legal text.
   - Continued release without targeted safeguards shows conscious disregard.
2. Substantial Assistance
   - AI's core design makes it trivial to produce lengthy fabricated quotes that *appear* verifiable.
   - This is more than neutral tool provision — it is the creation of the harmful content itself.
3. Causation
   - But-for ChatGPT's false quotes, the fraudulent in-line citations would not have been created or filed.

## IV. Anticipated Defenses and Rebuttals

1. Attorney Verification Duty
   - Rebuttal: Attorneys' duty does not erase the foreseeability of harm from a product designed to produce authoritative-looking legal text without verification.
   - Analogous to defective GPS navigation causing drivers to enter unsafe areas — user judgment does not break causation when the defect is inherent.
2. Section 230 Immunity
   - Rebuttal: Outputs are created by the AI itself, not by publishing third-party content; thus § 230 may not apply.
3. Disclaimers
   - Rebuttal: Generic disclaimers fail when the product is marketed as capable of specialized legal research-like reasoning without robust anti-hallucination safeguards.

## V. Strategic Framing

- Position as information pollution: just as toxic waste in a river harms all downstream users, false legal text pollutes the "information commons" of the judiciary.
- Emphasize foreseeability and systemic impact rather than isolated mistakes.
- Use analogies from defective product liability and misleading professional services.

If you like, I can next draft a short-form complaint excerpt that combines the *public nuisance* and *negligent misrepresentation* theories into an actual federal pleading style, so it reads like it's ready to file. That would help show exactly how the arguments would look in court.

> Would a Judge or a collection of Judges as Officers of the Court System have standing to bring such a claim against AI companies? Or would the US Attorney have such standing, if a Plaintiff who was misled volunteers to cooperate as a victim of this negligent misrepresentation and false information fed to them?



**RESPONSE:**

Let's break this down in terms of standing and proper plaintiff for each theory you're talking about — public nuisance, negligent misrepresentation, and contributory fraud — and who could realistically bring it.

---

# 1. Standing for Judges (as Individuals or Collectively)

A. Personal Capacity Standing

- Hurdle:

Judges, as individual people, generally don't have a *personal* injury from AI-generated false legal citations unless they can show harm to them personally (e.g., defamation, threats, reputational damage).

- Public Nuisance Theory:

Public nuisance claims usually require a *special injury* different from that suffered by the public at large. Judges experience the *same* systemic harm the entire court system faces (clogged dockets, wasted time), so their harm is likely not "special" enough for personal standing.

- Negligent Misrepresentation Theory:

Misrepresentation claims require *reliance*. Judges aren't the ones relying on the false quotes — the litigants are. So judges personally wouldn't fit that tort's standing requirements.

## B. Official Capacity Standing

- Judges in the U.S. don't typically act as "representatives of the judiciary" to bring civil claims in their own name on behalf of the institution.
- There is no general "judicial cause of action" to sue for harm to the court system. Such institutional litigation would normally be brought through the Executive Branch (DOJ) or sometimes through a state's Attorney General.

---

# 2. Standing for the U.S. Attorney / DOJ

## A. Federal Public Nuisance & Institutional Harm

- The U.S. Attorney, under direction from the Attorney General, can bring civil actions to protect federal interests — including the functioning of the courts.
- In cases like United States v. City of Philadelphia (1980s consent decrees for court reform) and United States v. Philip Morris USA (RICO case for public harm), DOJ acted to protect public institutions and enforce statutes.