David Morris Clayman / אדם דוד קליימן / דוד משה קליימן, *Pro se*

FILED BY _HR_ D.C.

AUG 2 5 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **David Morris Clayman** ( דוד / דוד אדם (משה קליימן), Plaintiff,<br><br>vs.<br><br>**UNITED STATES, et. al.,** Defendants | **CASE NO. 9:25-CV-80890-WM**<br><br>**PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION TO PROTECT PRO SE PLAINTIFFS FROM PREMATURE PREJUDICIAL DISMISSAL** |

# PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION TO PROTECT PRO SE PLAINTIFFS FROM PREMATURE PREJUDICIAL DISMISSAL

Plaintiff, appearing pro se, respectfully moves this Court to issue a permanent injunction enjoining the United States and its officers, agents, servants, employees, and attorneys from seeking prejudicial dismissal of a lawsuit filed by a pro se plaintiff without first making a good faith offer to engage in direct, face-to-face or video-conference communication with said plaintiff, and without explaining to the plaintiff the right to amend under Federal Rule of Civil Procedure 15 in light of that discussion.

---

## LEGAL BASIS

1. **Special solicitude for pro se litigants.**

The Supreme Court has held that allegations in a pro se complaint, "however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence," and that such pleadings are

held "to less stringent standards than formal pleadings drafted by lawyers" *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). The Court reaffirmed this principle: "A document filed pro se is 'to be liberally construed,' … and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

2. **Right to amend under Rule 15.**

Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave when justice so requires." The Supreme Court has emphasized: "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court explained that in the absence of factors such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility, "the leave sought should, as the rules require, be 'freely given.'" *Id.*

3. **Importance of human engagement in an era of automated processing**

The opportunity for a pro se litigant and government counsel to meet face-to-face (or by video conference) is not a mere procedural courtesy, but a safeguard of humanity within the legal process. As artificial intelligence increasingly performs research, drafting, and even evaluative tasks in litigation, the risk grows that the pleadings of an unrepresented plaintiff will be reduced to automated keywords and patterns, rather than evaluated with human judgment.

Without a requirement of good-faith human engagement, the United States could, in effect, move to dismiss a pro se action automatically—its filing screened and labeled by generative models—without any lawyer ever pausing to empathize, or even to recognize that a pleading drafted by a layperson may nonetheless contain the seed of a meritorious claim.

The Supreme Court in Haines v. Kerner and Erickson v. Pardus insisted that pro se pleadings must be given "less stringent standards" and "liberally construed." That principle presupposes human discernment—someone able to see past inartful wording or incomplete pleading to the possible tacit merits beneath. No algorithm can "liberally construe" in the sense intended by the Court; only a human meeting with the litigant can accomplish that.

Thus, in the age of generative AI, a modest safeguard requiring government counsel to meet with a pro se plaintiff and explain the right to amend is not just consistent with due process; it is essential to preserve the human character of justice. It ensures that the United States does not dismiss claims by automated reflex, but instead accords every citizen the dignity of at least one real human conversation before their case is deemed without merit and barred permanently from correction and refiling.

### 4. Access to the courts.

The Court has recognized a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Though articulated in the context of prisoners' rights, this principle underscores that procedural safeguards must ensure that litigants—particularly those without counsel—have a meaningful opportunity to present their claims.

### 5. Equitable authority.

Federal courts have broad authority under the All Writs Act, 28 U.S.C. § 1651(a), to issue orders necessary or appropriate "in aid of their respective jurisdictions" to ensure fairness and the proper administration of justice.

## APPLICATION OF THE *MATHEWS v. ELDRIDGE* BALANCING TEST IN THE AGE OF GENERATIVE AI

The Supreme Court has held that procedural due process requires balancing (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used, and the probable value of additional safeguards, and (3) the Government's interest, including the fiscal and administrative burdens that additional procedures would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

(1) Private interest. A pro se plaintiff's interest in maintaining access to the courts is fundamental. Wrongful dismissal of a case at the pleading stage deprives the litigant not merely of damages but of their only opportunity to be heard on matters of constitutional and statutory right.

(2) Risk of erroneous deprivation. When *Mathews* was decided in 1976, administrative review and judicial filings were prepared and evaluated by human decisionmakers. Today, generative text-processing systems are capable of screening, summarizing, and even drafting and filing legal documents. The risk of erroneous deprivation is magnified if the pleadings of pro se litigants can be processed automatically, without genuine human discernment. Unlike a human lawyer, an algorithm cannot "liberally construe" inartful allegations as required by *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), nor can it exercise empathy or contextual understanding. A requirement that government counsel meet and confer with the plaintiff, and explain their right to amend, directly addresses this risk by ensuring that at least one human judgment is applied before dismissal is sought.

(3) Government interest. The government has a legitimate interest in efficiency and avoiding frivolous litigation. But the additional safeguard requested here imposes only a minimal burden: a brief conference and explanation of Rule 15 rights. Compared to the constitutional interest at stake and the heightened risk of error posed by AI-driven processes, this burden is negligible.

Balancing these three factors, the *Mathews* test compels recognition that due process in the modern era requires more robust assurances of human judgment. Where generative AI can filter pleadings with increasing sophistication but without empathy, courts must ensure that no pro se litigant's claims are dismissed without at least one human opportunity for dialogue and explanation of the right to amend.

## THE LIMITS OF WRITTEN COMMUNICATION AND THE NEED FOR FULL-SPECTRUM HUMAN EXCHANGE

Written filings and correspondence alone are insufficient to capture the full range of human communication necessary for a mutual understanding of a case. Much of human knowledge is tacit, residing not in neatly stated propositions but in context, nuance, and the ability to correct misunderstandings as they arise in real time. A pro se litigant—especially one without legal training—cannot always anticipate what will be misunderstood or distorted, inadvertently or deliberately, until they see, hear, and respond to the other party's interpretation in a live conversation and come to an appreciation of the sincerity (or insincerity) of the other party's views.

Face-to-face or telephonic meetings allow for immediate clarification, including the small conversational interruptions and paralinguistic cues—tone of voice, pauses, emphasis, even hesitations—that help reveal when one party is misinterpreting the other. Without that dynamic

exchange, misunderstandings can "go off the rails," hardening into mischaracterizations that no later amendment can fully correct.

In contrast, reliance solely on written briefs magnifies the danger that a pro se litigant's inartful wording will be taken at face value and irreparably misconstrued. This risk is compounded by generative text-processing systems, which reduce human expression to tokens, keywords, and patterns, stripping away the nonverbal signals by which humans test understanding. The Supreme Court's mandate in Haines v. Kerner, 404 U.S. 519 (1972), and Erickson v. Pardus, 551 U.S. 89 (2007), that pro se pleadings be "liberally construed" presupposes a human interpreter capable of perceiving such nuance.

Moreover, cognitive science has shown that mutual understanding in human interaction is not achieved through words alone, but through the engagement of the mirror neuron system, which is activated when one person observes another's facial expressions, gestures, and tone of voice. This neurological mechanism enables empathy, perspective-taking, and the correction of tacit misunderstandings in ways that written text cannot. Requiring at least one live engagement ensures that both parties—plaintiff and government counsel alike—are compelled to bring their mirror neuron systems into play, allowing for the possibility of genuine recognition and mutual comprehension.

Thus, just as the Mathews v. Eldridge balancing test requires consideration of the "risk of erroneous deprivation" and the "value of additional safeguards," 424 U.S. 319, 335 (1976), the safeguard of a short, good-faith live exchange is of exceptional value. It ensures that the meaning of a pro se litigant's claims is not confined to imperfect words on paper, but illuminated by the full spectrum of human communication before dismissal forecloses the opportunity to be heard.

## REQUESTED RELIEF

Plaintiff respectfully requests that this Court permanently enjoin the United States and its officers, agents, servants, employees, and attorneys from filing or pursuing motions seeking prejudicial dismissal of a pro se lawsuit unless and until:

1. **Good-faith meeting.** They have made a documented, good-faith effort to meet directly with the pro se plaintiff—whether in person, telephonically, or via video conference—for the limited purpose of assessing whether the lawsuit may contain a non-frivolous basis in law or fact; and

2. **Explanation of right to amend.** During such meeting, they have clearly explained to the pro se litigant their right under Rule 15(a)(1) and 15(a)(2) to amend the complaint, consistent with *Foman v. Davis* and the special solicitude owed to pro se litigants under *Haines v. Kerner* and *Erickson v. Pardus*; and

3. **Certification.** Any motion to dismiss thereafter must be accompanied by a short certification describing (a) the effort to conduct the good-faith meeting, and (b) the advisement given to the pro se party regarding their right to amend.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion for Permanent Injunction and provide such other relief as may be just and proper.

Respectfully submitted,



s/Plaintiff David Clayman, Currently *Pro se*
7930 Palacio Del Mar Drive

Boca Raton, FL 33433-4148
+1 (321) 252 - 9626
david@clayman.org
david@ingwetrust.org
david@harmlesshands.org

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this Thursday, the 21st day of August, 2025, I mailed a copy of this

document to the Court via certified mail and electronically served a copy of this response to the

opposing counsel and Chief Magistrate Judge responsible for the case.

/s/ David M. Clayman
Pro Se Plaintiff

David Clayman
7930 Palacio Del Mar Dr
Boca Raton, FL 33433-4148

 

33401

RDC 99

FCM LETTER
BOCA RATON, FL 33433
AUG 21, 2025

$6.37

S2324E500496-15

Clerk of Courts, US District Court for Southern FL
701 Clematis Street, Room 202
West Palm Beach, FL  33401

INSPECTED

9589 0710 5270 2652 1230 73



CERTIFIED MAIL

9589 0710 5270 2652 1230 73

21 AUG 2025PM 1
MIAMI FL 330
8208 E1195 1b5bb  C028