ב"ה

David Morris Clayman / אדם דוד קליימן / דוד משה קליימן, *Pro se*

FILED BY _____ D.C.

OCT 06 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **David Morris Clayman** ( / אדם דוד / דוד משה קליימן),<br>Plaintiff,<br><br>vs.<br><br>**UNITED STATES OF AMERICA**<br>et. al. | CASE NO. 9:25-CV-80890-WM<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY AND TEMPORARY INJUNCTION BLOCKING THE PROPOSED TRUMP $1 COIN DESIGN AND ANY OTHER UPCOMING RELIGIOUSLY PROBLEMATIC DESIGNS**<br><br>☑ ~~Completed Full Prefiling Checklist Before Printing~~ |

# PLAINTIFF'S MOTION FOR PRELIMINARY AND TEMPORARY INJUNCTION BLOCKING THE PROPOSED TRUMP $1 COIN DESIGN AND ANY OTHER UPCOMING RELIGIOUSLY PROBLEMATIC DESIGNS

## I. INTRODUCTION

Plaintiff David Morris Clayman respectfully moves under Federal Rule of Civil Procedure 65 for a temporary and preliminary injunction enjoining the United States Treasury Department, the Bureau of Engraving and Printing ("BEP"), the United States Mint, the Secretary of the Treasury, and all subordinate officials—**as well as the President of the United States in his official capacity**—from:

    1. designing, engraving, striking, printing, or issuing any "quarter-millennial" or other coin or banknote bearing (a) the image or likeness of Donald J. Trump and (b) the motto *"In G-d We Trust"* (unhyphenated in original); and

    2. **designing, printing, engraving, or minting any new United States coin or banknote**

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design and Any Other Upcoming Problematic Currency Designs

1

that reproduces, displays, or otherwise uses the unhyphenated Divine Name within the National Motto or in any other form of text, inscription, legend, or device, pending the full adjudication of this action.

These measures are necessary to preserve the status quo and to prevent further irreparable harm to Plaintiff's statutory and constitutional rights during the pendency of this case.

Allowing the proposed Trump coin or any new currency design employing the unhyphenated Divine Name to proceed would (1) violate 31 U.S.C. § 5112-5114 and related coinage statutes by constituting an unauthorized act of personal vanity and political self-promotion; (2) substantially burden Plaintiff's religious exercise in violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq.; and (3) irreparably prejudice Plaintiff's pending claim to end the use of the unhyphenated Divine Name on U.S. currency (and U.S. passports, and other secular documents government may promote or require us to carry through bathrooms or shred/discard carelessly at end-of-life).

## II. FACTUAL BACKGROUND

On October 3, 2025, national media reported that Treasury officials, with presidential approval, are preparing to mint a "quarter-millennial" $1 coin featuring President Donald J. Trump and inscribed *"In G-d We Trust."* [CNBC, Oct. 3, 2025[1]; USA Today, Oct. 3, 2025[2].] No public statute authorizes such an issue. Plaintiff's Second Amended Complaint (ECF No. 35-1) already challenges the Government's continued minting and printing of currency bearing the unhyphenated Name of G-d as an unlawful burden on his faith. And 31 US Code §5114(b) prohibits the use of a living person's portrait on currency.

Brandon Beach is the Treasurer of the United States, a position that oversees the Department of Treasury's currency and coinage production, overseeing the US Mint and US Bureau of Engraving and Printing. He posted the following post on X, formerly Twitter, in a post that showed no respect for the law prohibiting living likenesses or the sacredness of the Name of G-d

---

[1] https://www.cnbc.com/2025/10/03/trump-face-coin-treasury-dollar.html
[2] https://www.usatoday.com/story/news/politics/2025/10/03/donald-trump-commemorative-coin-legal/86504452007/

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design and Any Other Upcoming Problematic Currency Designs

2

that I'm pleading prohibits use of the National Motto on US currency:



← Post

 **U.S. Treasurer Brandon Beach** 🅥
@TreasurerBeach

No fake news here. These first drafts honoring America's 250th Birthday and @POTUS are real.

Looking forward to sharing more soon, once the obstructionist shutdown of the United States government is over.

> **Steve Guest** 🅥 @SteveGuest · Oct 3
> ATTENTION ALL PATRIOTS: America is back, and so is the one-dollar coin.
>
> @POTUS @realDonaldTrump will forever be the face of America's 250th Birthday, thanks to @SecScottBessent and @TreasurerBeach.
> ….

12:55 PM · Oct 3, 2025 · **2.3M** Views

💬 4.6K    🔁 6.1K    ♡ 25K    🔖 2.1K    ⬆️

Given that Treasurer Brandon Beach, who is invested with official powers, starts his post by saying, "No fake news here." and continues saying "These first drafts honoring.... @POTUS are

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design
and Any Other Upcoming Problematic Currency Designs

real", we should certainly and must take this post at face value as a very clear announcement of Executive Branch coinage production steadfast intent to make sure Trump shall "forever be the face of America's 250th Birthday", quoting the underlying repost. The Treasurer Beach message was then reposted and endorsed by Treasury Secretary Scott Bessent on his official X account without further comment, signifying in this case strongly implied or express endorsement and agreement. There is no indication anywhere that the Courts or citizens can rely on from Treasurer Beach or Treasury Secretary Bessent (at least not that the Plaintiff has seen) that this is instead ironic tongue-in-cheek "trolling". We're about six months from the nearest April Fool's Day and there's no sign this is an April Fool's Joke; these officers are apparently very serious about In G-d We Trust and about Trump's double portrait being minted on the only Quarter-Millenial Coinage or Currency proposed publicly so far by the Treasury Department, and further steps toward production ("Looking forward to sharing more soon") appear imminent and actual once the recent Government shutdown interregnum is over.

The official X posts by Treasurer Beach (on the official @TreasurerBeach X account) and Secretary Bessent (on the official @SecScottBessent X account) constitute direct contemporaneous admissions of Executive intent to proceed with the Trump coin design bearing the unhyphenated motto and a two-faced double idolatry portrait of a living President. While not final agency actions in themselves, they provide competent evidence of imminent government conduct likely to cause irreparable injury, satisfying the 'credible threat' and 'realistic danger' standards for injunctive standing. And no doubt, any imminent further currency design, including the design of the $10 banknote to be effectuated by the end of 2026, will unless enjoined now pose an ongoing imminent credible threat and realistic danger of further entrenching the improper use of the vernacular Divine Name on currency in violation of Plaintiff's American, Jewish, and American Jewish religious faiths.

## III. LEGAL STANDARD

A temporary or preliminary injunction is warranted when (1) the movant shows a likelihood of success or serious questions going to the merits; (2) irreparable injury absent relief; (3) the balance of equities tips in the movant's favor; and (4) the injunction serves the public interest. *Winter v. NRDC*, 555 U.S. 7 (2008).

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design and Any Other Upcoming Problematic Currency Designs

4

# IV. ARGUMENT

### A. The Proposed Coin Violates 31 U.S.C. § 5114 and Related Coinage Statutes

Section 5114 directs that the Secretary of the Treasury "shall engrave and print United States currency and bonds of the United States Government and currency and bonds of United States territories and possessions," limiting such engraving to lawful, congressionally authorized designs. Companion provisions (§§ 5111 and 5112) set denominations, metallic content, and design rules, including further references to a prohibition on the use of living or recently dead Presidents on United States currency.

   1. **Beyond and in Violation of Legal Authority.** Under § 5112(d)(1) and (d)(4)(D)–(E), the Secretary must ensure that our currency will bear "dignified designs of which the citizens of the United States can be proud" and may not select "frivolous or inappropriate" designs or any portrait of a living person. No enabling act authorizes a Trump-portrait let alone a Trump-double-portrait coin. Minting one would revive the 1866 scandal of Treasury official Spencer M. Clark, who placed his own face on the five-cent fractional note, prompting Congress like virtually all non-monarchic democracies to forbid living person or politician portraits on currency.

   2. **Violation of Public Trust.** Currency design should reflect collective, not personal, honor. President Theodore Roseavelt (Roosevelt) insisted that national coinage embody civic virtue, not vanity. A Trump-portrait coin would amount to a **graven image of a political leader for the purpose of promoting political worship and personality cult**, which is idolatrous in both the moral and constitutional sense and violates the Plaintiff's sincerely held religious beliefs.

Accordingly, the proposed drafts selected for public promotion by Treasury, the BEP, and the Mint that they appear intent to push forward imminently further as soon as the Governmental shutdown ends are **beyond their authority and in violation of legal authority**, arbitrary, and contrary to law.

### B. The Coin Imposes a Substantial Burden on Plaintiff's Religious Exercise under RFRA

Plaintiff's sincerely held belief forbids participation in or circulation of media displaying the

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design
and Any Other Upcoming Problematic Currency Designs

5

unhyphenated Name of G-d. By issuing any new coin or banknote that unites the unhyphenated Divine Name with the graven image of a political leader, particularly as now on a Quarter-Millenial coin that Plaintiff would otherwise want to purchase, collect, and/or circulate, the Government investing such a coin with the status of "legal tender" in any way under 31 US Code §5103 "for all debts, public charges, taxes, and dues" would compel Plaintiff and others to engage with and accept for debt and dues payment an object, this proposed $1 Trump Coin design that the Treasurer and Treasury Department seeks to push, that embodies political idolatry and inappropriately continues abusing the Sacred Name of G-d on a medium that is guaranteed to suffer through bathroom carry and face-down exposure on unclean/inappropriate surfaces, be thrown to the floor, and suffer frequent reckless abandonment or abuse in places improper for any Name of G-d that may need to flow through my chain-of-custody, violating my religious responsibilities of *Shaimos* (Names of G-d) custody and conscience.

Under RFRA, the Government may not substantially burden religious exercise unless it demonstrates a compelling interest and the least restrictive means. 42 U.S.C. § 2000bb-1(b). Here:

- **Substantial Burden.** Nationwide circulation would compel Plaintiff to handle or refuse lawful tender that he believes desecrates the Divine Name and promotes idolatrous political veneration of a living person.
- **No Compelling Interest.** Vanity commemoration is not compelling; honorary designs could use neutral mottoes like *Out of Many One,* the modern American translation of the historic motto *E Pluribus Unum* circling one side of the proposed Trump Coin design, or if the President, Treasury, and Congress wish, *In G We Trust*, which can be interpreted freely in pluralistic diversity to refer to Good, Goodness, Goodwill, Grace, Growth, Giving, Gratitude, Generations, Guarantees, Government, Grandparents, or for believers, G-d, *without* committing the Government to imprint or engrave the fully spelled sacred Name of G-d in clear and convincing violation of RFRA and the 1st Amendment, let alone the 5th, 8th, and 14th Amendments.
- **Not Least Restrictive.** Treasury, the BEP, or the Mint could omit the religiously sacred motto, using an alternative like "Out of Many One", "We Citizens All Vote[3]", the other messages

---

[3] A motto that this Plaintiff aims to get ever closer to in advocating for and securing universal suffrage for all citizens who suffer under our laws, including roughly 11 million disenfranchised teens and roughly 4 million

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design
and Any Other Upcoming Problematic Currency Designs

6

proposed in *Appendix 1*, national contest alternatives, or an abbreviated form like "In G We Trust", or issue a private medal rather than legal tender, and the BEP or Mint need not use Trump's portrait – any other non-portrait theme "emblematic" of the US Quarter-Millenial can be chosen.

**C. Irreparable Harm**

Violations of religious freedom and any other "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" *Elrod v. Burns*, 427 U.S. 347, 373 (1976). By very natural logical extension, the same "unquestionable irreparable injury" for burdens on religious liberty and freedom of "even minimal periods of time" applies to Religious Freedom and Restoration Act (RFRA) substantial burdens on sincere religious belief, as a neutrally written law emburdens free religious expression just as substantially or severely or frequently even more so than a law that deliberately targets religious exercise in violation of both RFRA and the 1st. Once minted or printed, the coin or note generally cannot be recalled, except by extraordinary legislative or judicial action that as far as the Plaintiff knows is unprecedented. Issuance would also prejudice Plaintiff's currency-reform claims by entrenching the motto before full review.

**D. Balance of Equities and Public Interest**

Postponing issuance of a vanity coin and the further entrenchment of religious expression pending resolution of this case would impose no significant material harm upon the Treasury Department, the Bureau of Engraving and Printing, or the Mint. By contrast, Plaintiff's injury to conscience is grave, and the public interest lies firmly in preserving statutory and constitutional fidelity while preserving pluralistic religious freedom. *See Roman Catholic Diocese of Brooklyn*

---

```
disenfranchised criminals, whose concerns and whose civic religious and civic
education politicians do not take seriously or urgently enough when they are
stripped of suffrage and can't influence elections. It is a tragedy that our
youngest soldiers have not had any opportunity to vote freely for their
Commander-in-Chief before enlisting and volunteering to sacrifice their lives
under her command - Congress made a grave mathematical mistake with the 26th
Amendment - Electoral College Elector / Commander-in-Chief, Vice-President, and
contingent election House Rep and CIC successor voting must start no later than
13 or 14 for soldier suffrage to be mathematically guaranteed under a
meaningful social contract worthy of Armed Forces service regardless of the
luck or misfortune of the young soldier's birthdate with respect to their
enlistment and the next Commander-in-Chief federal election.
```

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design
and Any Other Upcoming Problematic Currency Designs

7

*v. Cuomo*, 141 S. Ct. 63 (2020). A more lawful, inspired, and inclusive redesign of U.S. currency is both warranted and timely to honor the July 4, 2026 Quarter-Millennial Celebration in a manner consistent with the First Amendment and RFRA and the historical "No <u>In G-D We Trust</u> Motto" principles advanced by President Theodore Roseavelt (Roosevelt) and those who religiously supported him on the beautiful Gaudens *No Motto Double Eagle Coin* between 1905 and 1907. Finally, if the President, Congress, and the Treasury wish to immediately avoid delay in preparing coinage or banknotes for the Quarter-Millennial or the forthcoming 2026 $10 banknote redesign and any designs beyond, they may proceed now within the parameters that this Plaintiff pleads and this Court identifies as most likely to withstand constitutional and statutory scrutiny under preliminary or temporary injunctive relief, subject to ongoing Legislative and Judicial Branch Review.

The Executive Branch — including Treasury Secretary Bessent, who oversees Treasurer Brandon Beach and all subordinate officers — has been on notice of this litigation regarding the transition to "In G We Trust" or another religiously compatible motto since at least July 24, 2025, more than seventy days ago. Moreover, the statutory prohibition against the depiction of living persons on U.S. currency has stood for over 158 years, since 1866. We United States citizens do not live in the English monarchy, stamping our coins with the faces of our living leaders idolatrously as England still does for Kings and Queens. The Plaintiff can't find an example anywhere of a functioning non-monarchic democracy that allows portraits of its living elected political leaders to be engraved or printed on currency. Perhaps Trump envies the currency portraiture of King Charles III of the United Kingdom; but if he wishes to see his portrait on national currency while he still breathes, he needs to find a way to become the King of England or Morocco or Bhutan instead of the President of the United States.

Given the ample prior notice, the Treasury Department has had time and opportunity to prepare an alternative design for the $1 Quarter-Millennial Coin. Its decision instead to proceed recklessly with (a) a politically idolatrous monarchically-inspired portrait of a living person on currency and to (b) further entrench the phrase "In G-D We Trust" — in advance of and extending beyond the Quarter-Millennial commemoration — is now ripe for immediate injunctive relief.

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design and Any Other Upcoming Problematic Currency Designs

8

### E. Donald J. Trump and Treasurer Beach Are Now Necessary Parties

The coin proposal could not advance without the President's and Treasurer Beach's approval and encouragement. They are both necessary parties under Fed. R. Civ. P. 19 to ensure complete relief and accountability. The Plaintiff asks for an order authorizing the issuance of a Summons to President Trump and Treasurer Brandon Beach on this and related matters in this pleading including notably as well, with respect to President Trump, President Trump's August 25, 2025 Cash Tender Bail Executive Orders as detailed in the *Second Amended Complaint.*

### F. The Proposed Trump Coin Reflects a Lack of Creativity and a Failure of Moral and Civic Leadership

The Government's proposed "Trump Coin" also fails on the most basic aesthetic and moral level: it shows a striking lack of creativity, vision, and civic purpose appropriate to a quarter-millennial celebration of the United States. The design concept, as publicly described, does not propose any **new or inspiring motto** that could unify citizens of all faiths and beliefs, nor any **new high-impact currency title** or **modern, dynamically-capable currency symbol** that could elevate the design of American money into the 21st century.

Rather than seizing the rare opportunity to honor the ideals, achievements, and aspirations that have sustained the Republic for 250 years, and supercharge education and design in the manner described and proposed previously by the Plaintiff, the proposed coin design merely repeats an existing, religiously contentious motto and centers upon the likeness of a single living political figure. It celebrates personality and political idol worship over principle.

The United States has always risen to great civic occasions through bold design and moral creativity. From the artistic reform of American coinage led by President Theodore Roseavelt (Roosevelt) to the modern redesign of U.S. currency for accessibility and security, each generation has sought to renew the symbols of the Republic with integrity and imagination. A quarter-millennial commemoration should represent an opportunity for the Government to show **moral backbone**, creative courage, and reverence for our constitutional and cultural heritage — not a descent into political vanity or sectarian repetition.

By contrast, the proposed Trump Coin is derivative, unimaginative, and morally hollow. It does

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design and Any Other Upcoming Problematic Currency Designs

9

not advance any new ideal, civic narrative, or national aspiration. It does not even attempt to reconcile the religious controversies surrounding the national motto by suggesting a more inclusive or reverent alternative. It is, therefore, inconsistent with the Government's duty under 31 U.S.C. §§ 5111–5114 to uphold the dignity and appropriateness of U.S. currency designs.

The quarter-millennial milestone calls for reflection, innovation, and unity. The proposed coin does none of these things. It is the very opposite of "high-impact design." The Government should be setting an example of moral seriousness and unfettered creative imagination, befitting the gravity and promise of America's 250th year — not merely **trumpeting Donald Trump**.

The Plaintiff, by contrast, would plead with the Executive Branch to work with Congress in pushing the design envelope forward harder and proposing:

1. a new name for our currency's major and minor denominations (Plaintiff proposed many options in the *Second Amended Complaint*, including matching the minor denomination cents [meaning merely "hundredths"] to the educational and sport "**points**" motivational system like China),

2. a new or traditional motto that's universally religiously acceptable,

3. a new currency symbol that's beautifully and historically uniquely digitally dynamic and animated (Plaintiff proposed a POS-activated checkmark for commercial voting/endorsement of goods and services),

4. a switch to more durable, cheaper, colorful, secure, and more damage-resistant polymer banknotes,

5. more accessible designs for the blind and visually impaired, and

6. even a new title for our country for the next run of 250 Years (Plaintiff proposes the mission-, guarantee-, and science- and policy-experiment-focused "***Lifesaver Labs***" or, if you wish to stay grounded on these American continents, "***Lifesaver Labs of America***", as a benchmark entry instead of "*United States of America*" for the next 250 years of our evolving history), where each State is a separate Lab unit obliged to experiment with ways to save life, liberty, and the pursuit of happiness. But open up a countrywide naming contest – let's see what the People have to suggest. Someone surely will come up with something wiser. And whatever name we select can be announced in a July 4, 2026 *Declaration of Interdependence*. If Donald

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design
and Any Other Upcoming Problematic Currency Designs

10

Trump is able to rename the Gulf of Mexico to the Gulf of America, he's surely not afraid of changing the name of Our Country too, given Congressional choice, authorization, and consent. Much of this would require enabling legislation, but that's within the reach and influence of the very well-connected America250 United States Semiquincentennial Commission, if they agree any of these design proposals above is worthy of our Pursuit.

Without enabling legislation, the proposed Trump-trumpeting $1 coin design exceeds and contravenes judicially reviewable lawful authority both (a) through its continued inclusion of the "In G-d We Trust" motto as argued in the *Second Amended Complaint* and (b) through its idolatrous and quasi-monarchic depiction of a living political figure, Supreme Commander and President Trump. For these limited reasons—and for broader aesthetic and moral reasons as well—the surprisingly unimaginative "Trump $1 Coin" stands contrary to the modern public interest and epitomizes a failure of creative and ethical stewardship. This Court's injunction, by remanding and reigniting public deliberation over what forms of civic expression Congress and the Executive may lawfully and appropriately authorize, could correct that failure and help shape a more forward-looking design standard worthy of the approaching Quarter-Millennium[4].

## V. PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

1. **PRELIMINARILY AND TEMPORARILY ENJOIN** the President of the United States, the Department of the Treasury, the Bureau of Engraving and Printing, the United States Mint, and all subordinate officers, agents, and employees **from designing, engraving, striking, printing, approving, or issuing any United States coin or banknote that—**

   a. bears the unhyphenated Divine Name ("G-D") Plaintiff holds sacred within the national motto or any other inscription or legend; or

   b. depicts the image or likeness of Donald J. Trump or any other living person prior to two years following his or their death, as prohibited by law;

---

[4] And, noting in passing, even this milestone's name suffers from another curious failure of imagination—Congress's choice to name its planning body the "United States Semiquincentennial Commission", a naming choice that doesn't roll off the tongue and only makes sense if Congress were sleepless or semiquincentennially drunk at the time it picked the Commission's name. I'll discuss this a bit further in *Appendix 1*.

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design and Any Other Upcoming Problematic Currency Designs

11

**except** that this injunction shall not disturb previously authorized or in-production currency designs necessary to maintain normal circulation pending final resolution of this action.

2. **MAINTAIN the status quo** by prohibiting the initiation or approval of any new coin or banknote design containing the unhyphenated motto *"In G-d We Trust"* (or its variants) until this case is fully adjudicated on the merits, to prevent further entrenchment of the challenged design before judicial review.

3. **ORDER** that President and Commander-in-Chief Donald J. Trump and Treasurer Brandon Beach be joined as defendants or intervenors for purposes of this and related relief, with President Trump's responsibility detailed in the *Second Amended Complaint (SAC)* and Treasurer Brandon Beach held subject to all the same claims as Treasury Secretary Scott Bessent in the *SAC*; and

4. **GRANT** such further relief as the Court deems just and proper.

## VI. CONCLUSION

For more than 150 years, American law has rejected self-glorifying venerational living person currency designs. Issuing a Trump-motto double portrait coin—or any new currency bearing the unhyphenated Sacred and Divine Name motto—would combine Trump's personal political vanity with extremely sacred sectarian symbolism and further entrench the *In G-d We Trust* motto before full judicial review. My RFRA and 1st, 5th, 8th Amendment claims, equal protection under the laws under the 14th Amendment, 31 U.S.C. § 5114, and the Constitution forbid it[5].

The only thing seemingly keeping the Sixth Circuit Court of Appeals from ruling in Plaintiff's

---

[5] Under federal law, President Trump has a more plausible immediate route of getting his portrait idolatrously carved on Mount Rushmore... which Trump also appears to be attempting or endorsing, under for example H.R. 792 introduced by an ally Anna Paulina Luna who idolizes or idolized him (FL-13, *St. Petersburg*), "To direct the Secretary of the Interior to arrange for the carving of the figure of President Donald J. Trump on Mount Rushmore National Memorial", and there are many press reports dating back many years of Trump's "dream" he's been hoping to realize to be portrayed on Mount Rushmore, despite the seemingly strict geological physical limitations and the view of geologists, sculptors, and historians that it's a completed work that can't be extended to any fifth face.

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design
and Any Other Upcoming Problematic Currency Designs

favor in 2018 was the lack of pleading on unavoidable substantial burdens. The Plaintiff has pled unavoidable substantial burdens quite comprehensively now in the *Second Amended Complaint (SAC)*, detailing directly how this case is more complete than and cures all remaining defects of *New Doe Child* #1 v Congress, 891 F.3d 578, 591 (6th Cir. 2018). It is time now for an injunction to prevent further knowing design abuse of the Name of Heaven on United States currency, as pled in the *SAC*.

Plaintiff therefore asks that this Court preserve the status quo, honor the foundation of the claims already laid in the *Second Amended Complaint* on protecting the Sacred Name of G-d from irreverence or sacrilege in the Sacred Name within the National Motto being further designed into and onto future currency (arguments that mirror and modernize the Mt. Rushmore religious beliefs of Theodore Roseavelt), and issue the requested temporary and preliminary injunction forthwith on the likelihood of the Plaintiff prevailing on limiting the use of G-d's Sacred Name on cash and coin and similar religiously-problematic *Shaimos* security documents like the design of the United States Passport under RFRA and/or the 1st, 5th, 8th, and/or 14th Amendments.

Standing, RFRA burden analyses, arguments against the properness and relevancy of the existing ceremonial deism precedents, and other topics this Court may find germane and necessary to consider, are all argued in the *Second Amended Complaint* (DE 35-1), attached to the *Motion for Leave to File Second Amended Complaint* (DE 35).

Knowing that this Court has already stated that is has previously reviewed all or nearly all existing documents in the docket to date, the Plaintiff hopes for a rapid decision on this Preliminary and Temporary Injunction.

Executed before G-d and this Court on October 6, 2025.

s/Plaintiff David Clayman, Still *Pro se*
7930 Palacio Del Mar Drive
Boca Raton, FL 33433-4148
+1 (321) 252 - 9626
david@ingwetrust.org
david@inhashemwetrust.org
david@lifesaverlabs.us
david@clayman.org

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design and Any Other Upcoming Problematic Currency Designs

13

## DECLARATION OF DAVID M CLAYMAN IN SUPPORT OF MOTION FOR PRELIMINARY AND TEMPORARY INJUNCTION

I declare under penalty of perjury that the foregoing and the factual claims and arguments in the *Second Amended Complaint* (incorporated by reference) are personally known by myself, the Plaintiff, and are true and correct. Executed on October 6, 2025,

s/Plaintiff David Clayman, Still *Pro se*
7930 Palacio Del Mar Drive
Boca Raton, FL 33433-4148
+1 (321) 252 - 9626
david@ingwetrust.org

## CERTIFICATE OF SERVICE – ELECTRONIC AND PAPER SERVICE

I HEREBY CERTIFY that on this 6th day of October, 2025, I served a copy of this response electronically upon opposing counsel of record and, as required by the rules governing pro se litigants in the Southern District of Florida, subsequently printed and mailed a copy of this filing to the Court by certified mail.

Because non-prisoner pro se litigants are categorically denied access to the Court's electronic filing system, I am compelled to rely on postal delivery. This requirement has repeatedly caused substantial burdens, including additional forced mailing expense running into the hundreds of calm (as currently named, dollars), approximately two work-days (16 hours) spent preparing mailings and running to the post office and back, docketing delays, risk of out-of-order or incomplete docket entries, occasional severe legibility issues from malfunctioning home printing, risk of lost or misprocessed filings, difficulty in filing urgent matters within 24 hours or over weekends, earlier day-of deadline enforcement at 6 PM post office closure time for pro ses than attorneys (who can flexibly file as late as 11:59 PM local as needed in a pinch, if they realize their arguments need further last-minute refinement), and docket misunderstandings by opposing counsel. In this particular case, I have already experienced each of these problems at least once between March 2025 and the date of this Certificate of Service.

This process also compels me under Local Rules to submit sacred text like the Names of G-d in the Talmud, Megillat Ta'anit, and supporting documentation and argumentation in paper form as part of bringing this case in an intelligible and complete manner to the Court, raising unresolved concerns under RFRA and the 1st Amendment regarding proper handling at the end of proceedings that the US Attorney and Defendants are resisting settling via reasonable religious accommodation.

Accordingly, I respectfully preserve this objection that a categorical prohibition on electronic filing by non-prisoner pro se litigants imposes unequal burdens that place pro se parties at a significant and severe disadvantage compared with attorneys and those litigants who can more easily justify, afford, or find representation for complex civil litigation like this at full lifetime-compounded cost. According to a report

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design
and Any Other Upcoming Problematic Currency Designs

14

from the Federal Judicial Center, at least 65% of District Courts permit pro ses to file electronically, some with or without prior permission of Court. I reserve the right to seek review of whether these practices in the Southern District of Florida of absolute denial of pro se plaintiff electronic filing privilege access as contrasted with more permissive districts like the Northern District of Illinois, violates the Equal Protection Clause of the Fourteenth Amendment broadly and the Religious Freedom and Restoration Act in this particular case. I further submit that the super-majority of jurisdictions already provide conditional e-filing access to trained or experienced pro se litigants, that I can meet any such reasonable conditions on e-filing access, and that such a system would mitigate these burdens without undermining this or similar Courts' legitimate administrative interests.

/s/ David M. Clayman
Pro Se Plaintiff

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design and Any Other Upcoming Problematic Currency Designs

15