**APPENDIX 1:** *On "E Pluribus Unum" and Legislative/Executive Langauge Dysfunction*

As a brief but relevant digressive sidenote, beyond the core legal objections to the use of the sacred Name of G-d and to the two idolatrous double portraits of a living politician at issue in this injunction, before Trump becomes eligible two years after his death per 31 US Code § 5112 (n)(2)(e), the Plaintiff notes that the Treasurer's proposed design continues to employ the Latin phrase *E Pluribus Unum*—in an almost defunct, nearly dead language known in written or spoken form to only a minuscule number of persons worldwide, kept alive and legible arguably only by a very small number of practicing Roman Catholics and dead langauge classicists and historians. It is difficult to comprehend why, in 2025, the Treasury Department under Congressional mandate still insists on preserving a Latin motto that was accessible only to the highly educated elite of 1776, rather than translating it into the modern and globally understood language of the United States itself.

A simple, faithful rendering—such as **"Out of Many, One"** or **"Through Diversity, One"**—would align with the realities of modern interdependence and with the linguistic progress of the past 250 years, during which the American form of English has become the most widely understood language on Earth. Approximately **1.5 billion more people** can read basic English than Latin, whose literate population is now vanishingly small.

The Plaintiff finds it astonishing that Congress and the Executive Branch—the President, the Treasury Secretary, and the Treasurer—cannot at least agree upon and enact such a minimal, modernization-minded update through a simple amendment to **31 U.S.C. § 5112.** The Plaintiff reasonably speculates that this could be accomplished in less than an hour of committee work and ten minutes of floor time in both the House and Senate—by unanimous consent if necessary—to effect a transitional, commonsense switch from the obsolete *E Pluribus Unum* to its modern English equivalent.

Were the motto written instead in a **Government-disfavored** language such as Spanish, no one doubts that the current Administration would insist on translating it immediately into American English. Plaintiff thinks our heads would spin with how fast Trump would spin up as much media as he could under his sphere of influence to oppose the US Government continuing to print or mint currency in disfavored Spanish. Yet Spanish, with its hundreds of millions of readers, would still serve a vastly larger and more practical audience than Latin. Indeed, the Plaintiff would applaud Congress and the Executive if they chose to debate this question further and to translate *E Pluribus Unum* into **"De la diversidad, unidad"** or even "因多元而合一" or "因多元而共

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design
and Any Other Upcoming Problematic Currency Designs

16

决" ("Diversely Voting Together")—or a variety of rotating translations that would carry the American democratic ideal to hundreds of millions of Spanish speakers and/or over a billion Chinese readers, or through rotating and populationally fractionally representative engraving the motto in the diversity of top 20 languages to reach almost all 8.2+| billion souls on Earth, pressing our case for countries like China or Russia to turn toward and embrace democracy rather than continue turning away, entreating them in a motto in their own language on our coins and currency. Hell, the Government could even play with or experiment with engraving a very small QR code on our currency (if technical limitations allow) that captures and captivates national and global attention and imagination through the medium of rotating and evolving rich media, representing who we are both domestically and to the world. Cross-linked media campaigns may prove more sticky, motivating, and meaningful as a way of *calm*unicating (communicating) domestically and abroad our core values.

In fact, if Donald Trump wished to host or announce a weekly TV series about America on themes "emblematic" of the Quarter-Millenial as we approach the Quarter-Millenial he could do exactly that and produce a coin with a QR code on one side, the reverse side, that links everyone to the weekly or monthly media he hires a production company to produce. For the term of his Presidency, with Congressional consent, he could control what media gets released in connection with the Quarter-Millenial Coin's QR code. There's nothing that the Plaintiff knows about in law or under the doctrine of political idolatry that prevents Trump as our President and Commander-in-Chief from presenting media to the country as our President and CIC from the White House or the Philadelphia Liberty Bell or the Battlefield of Gettysburg or almost any other setting he chooses. He could also, if he wishes, digitally display the motto "In G-D We Trust" in a digital video that currency users can connect to via the QR code -- while the Plaintiff believes that would still violate the 1st Amendment's *Separation of Synagogue and State*, that wouldn't violate RFRA or cause a 5th, 8th, or 14th Amendment Breach for the Plaintiff because the medium of G-D's Name would be digital and wouldn't be physical media. He just can't immediately imprint or mint his portrait on currency while he lives or even until a full two years after he's legally dead. Not even President Carter is eligible, who has been dead since December 29, 2024, is eligible yet for portraiture on currency until after the Quarter-Millenial on or after December 29, 2026, per 31 USC §5112.

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design
and Any Other Upcoming Problematic Currency Designs

17

The Plaintiff thus argues that Congress and the Executive Branch are failing to engage even the most basic level of creative or democratic imagination appropriate to the **Quarter-Millennial Celebration**—a moment that calls for a forward-looking **"Declaration of Interdependence" of 2026** to complement, contrast, and match the "Declaration of Independence" of 1776, with its message reinforceable on our coinage and currency. If the question of the national motto were opened transparently and deliberatively to the American People—through public comment and public design—the Plaintiff is confident that dozens of superior ideas would emerge, surpassing his own very limited wisdom and design capacities.

I'll start to <u>minimally</u> believe the Congress is meeting this design moment with <u>minimally</u> acceptable effort when I see the America250 Leadership change their committee name to the "US Quartermillenial Commission", changing "Semiquincentennial" to "Quartermillenial", and translate or propose a modern alternative to the Latinate "E Pluribus Unum". The Commission is full of talented personalities. I fail to see why they haven't yet gotten at least one of those under control, and why they're so quickly losing control over the legality of the Quartermillennial Coinage and Currency proposed by the Executive Branch, necessitating now Court review and injunctive relief.

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design
and Any Other Upcoming Problematic Currency Designs

18

**APPENDIX 2: THE PRO SE'S PLIGHT – A PICTURE WORTH 1,000 WORDS**

Please don't deny this preliminary and temporary injunction. If this injunction is denied, as the *Motion to Protect the Sacred Names of G-d* and the *Motion to Protect Pro Se Plaintiffs* have been denied, the situation shall even more feel like and resemble this Banksy Mural – with the judicial branch privileging the wishes of the extraordinarily powerful with the force of a mallet over the needs of a well-evidenced, substantial Civil War, 1905-1907, mid-1950s, and contemporary religious minority protesting the use of *In G-d We Trust* on currency represented by a citizen out-of-power pleading this case and petitioning the government pro se, asking for reasonable religious and pro se protections and accommodations.



**Banksy Mural: "*The Pro Se's Plight*" (aka *The Royal Courts of Justice*)**

Plaintiff argues that pro se plaintiffs should have a *much* higher win rate than 3%-5%, especially now within the age of highly affordable instantly ubiquitously available Bar-qualified Artificial Intelligence legal drafting and procedure/precedent support. Very simple steps to accommodate Pro Ses like explaining the right to amend or meeting with the pro se in a more human format as requested in the *Motion to Protect Pro Se Plaintiffs*, or providing those detained or imprisoned with regular access to computer terminals to interact with legal AI, and developing a US branch version of legal AI for publicly supported access by US citizens and residents, could help so many more pro ses like the Plaintiff survive motions to dismiss and other painful, permanent, and prejudicial adverse decisions, could help us better identify better and best bases of standing interactively before a concerned and compassionate Government officer, and see our case(s) actually decided on the merits rather than malleted down and away callously before our injuries and hardships are fully duly considered. See the pre-modern AI *Justice for Pro Se's*, by the Honorable Retired Judge Richard A. Posner, the most cited American legal scholar of all time, for all the ways judicial practices, procedures, rules, and attitudes commonly tilt against justice

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design and Any Other Upcoming Problematic Currency Designs

19

for pro ses.

***Pro Se Loss-Win Rates in Federal District Court***: https://lawreview.uchicago.edu/print-archive/empirical-patterns-pro-se-litigation-federal-district-courts

***Justice for Pro Se's by Richard A. Posner***:
https://www.amazon.com/Justice-Pro-Ses-Richard-Posner/dp/198572443X

***Posner as Most Cited Legal Scholar***:
https://lawreview.uchicago.edu/print-archive/most-cited-legal-scholars-revisited

Plaintiff's Motion for Preliminary and Temporary Injunction Blocking the Proposed $1 Trump Coin Design and Any Other Upcoming Problematic Currency Designs

20