David Morris Clayman / אדם דוד קליימן / דוד משה קליימן, *Pro se*

FILED BY ___ D.C.
OCT 24 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **David Morris Clayman** ( / אדם דוד / דוד משה קליימן), Plaintiff, vs. **UNITED STATES OF AMERICA** et. al. | CASE NO. 9:25-CV-80890-WM <br><br> **PLAINTIFF'S SUR-REPLY IN RESPONSE TO DEFENDANT'S REPLY ON FIRST AMENDED COMPLAINT** <br><br> ☐ Completed Full Prefiling Checklist Before Printing |

**PLAINTIFF'S SUR-REPLY RESPONDING TO DEFENDANTS' REPLY IN SUPPORT OF FIRST AMENDED MOTION TO DISMISS**

**I. Introduction**

Defendants' Reply [D.E. 53] introduces new theories and facts absent from their Motion to Dismiss [D.E. 27]: (1) a previously unpled res judicata defense; (2) extra-record assertions about bail-bondsmen and debit cards; (3) a new "debit vs. credit" distinction minimizing Plaintiff's burdens as mere inconvenience; (4) a claim that federal defendants bear no responsibility for cash-bail policies; and (5) new comparative-penalty reasoning under *Hobby Lobby* and *Yoder*. Because these raise material issues unavailable for prior response, Plaintiff submits this Sur-Reply to ensure a full and accurate record.

**II. Background**

A condensed timeline of *New Doe Child No. 1 v. Congress*, 891 F.3d 578 (6th Cir. 2018), is in **Appendix C**. It shows why that litigation never afforded Plaintiff a meaningful chance to advance the claims now before this Court.

**III. Res Judicata Does Not Apply**

Res judicata applies only if the earlier case gave the same party a full and fair opportunity to litigate the same claim before a court of competent jurisdiction. *Montana v. United States*, 440 U.S. 147 (1979); *Taylor v. Sturgell*, 553 U.S. 880 (2008). That standard was not met.

### A. Inadequate, Ethically Conflicted Representation.

Dr. Michael Newdow's coalition case was sincere but structurally limited and ethically conflicted. Dozens of atheist and secular plaintiffs (42 in total) focused on Establishment-Clause symbolism, not on Plaintiff's Jewish-law burden against handling currency bearing the Divine Name. His unique RFRA claim was barely mentioned and never developed through evidence or briefing. That case challenged governmental endorsement of religion; this one challenges daily coercion forcing Plaintiff to choose between faith and commerce. Plaintiff has avoided cash for over eleven years except under *pikuach nefesh* — life-preserving necessity — three times total.

(That narrow exception underscores rather than negates the burden: he must constantly decide whether a crisis resolvable uniquely with cash is not just property-threatening but actually "life-threatening enough" to justify violating sacred law. Such moral and religious triage is itself a severe coercion.)

The prior action never tested these facts. Under *Richards v. Jefferson County*, 517 U.S. 793 (1996), and *Hansberry v. Lee*, 311 U.S. 32 (1940), preclusion cannot apply when interests were nominally but not actually represented. The coalition's almost total focus on atheist claims in District Court and counsel's total failure to raise Court-cognizable substantial burdens that Plaintiff uniquely faced in a timely way in District Court or Appeals left Plaintiff's distinct religious claims unheard, drowned out by the arguably less substantial and less extreme burdens the more numerous atheist Plaintiffs suffered, as within the atheist Plaintiff class there seems to have been no one who had to completely and almost uncompromisingly stop using cash as an adult like Plaintiff has.

### B. Nominal Participation.

During his December 2015–January 2016 arrests and 2016 - 2018 prosecution, Plaintiff was disoriented and unable to coordinate effectively with counsel. The First Amended Complaint was filed without consultation, and his post-arrest experiences were never presented. Representation was thus inadequate under *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973). He had no "full and

fair opportunity" to litigate his claims.

### C. Distinct Claims and New Facts.

This case introduces materially different facts and legal theories: the Jewish prohibition on writing or circulating the Divine Name, exclusion from bail and employment systems, and the August 25 2025 Executive Order mandating cash bail. A claim based on "new and material operative facts" is not barred. *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322 (1955).

### D. Equitable Considerations.

Res judicata is meant to conserve judicial resources, not to silence claims never heard. *Brown v. Felsen*, 442 U.S. 127 (1979). Fairness and due process require that these RFRA claims be considered on their merits.

## IV. Bail-Bondsmen Are Not a Neutral Alternative

Defendants now assert Plaintiff could have used a bail bondsman and therefore suffered no substantial burden. That argument is both factually unsupported and legally invalid.

### A. Extra-Record Assertion.

Whether bond agents were available, affordable, or even constitutional in these circumstances is a fact question improper on a Rule 12(b)(6) motion. *Speaker v. HHS*, 623 F.3d 1371 (11th Cir. 2010). Plaintiff plausibly alleges that he had ample liquid funds to self-post bond via check or debit but was prevented from accessing his wallet and checkbook for 28 days. That period of unnecessary confinement is the core injury.

### B. Religious Burden.

RFRA protects against coercion to violate belief, not just absolute impossibility. Delegating a transaction to others who must bond via desecrated currency like parents or friends still compels participation in the violation, *if* they even agree to participate in bonding Plaintiff Clayman out, which is something Plaintiff Clayman learned he can never again rely on. The Government cannot force a believer to choose between faith and ongoing deprivation of liberty or permanent deprivation of property (while presumed innocent!) without due process of law.

### C. Economic Penalty.

If Plaintiff were forced in the direction of paying a bondsman, Florida law requires non-refundable premiums of 10% (state) and 15% (federal). Fla. Stat. § 648.33(2). For a $25,000 bond, that is $2,500–$3,750 lost; for a $100,000 federal bond related to say a 18 U.S. Code §878 or §871 violation (which might happen someday, as previously pled in the *Second Amended Complaint*), that would be $15,000 confiscated by a bondsman while Plaintiff remains innocent — a coercive penalty comparable to those deemed substantial in *Hobby Lobby* and *Yoder*. That amount equals over half a year of post-tax minimum-wage income in Florida — a heavy price to impose on religious integrity for Plaintiff to fight for the right to kill mini-Hitlers... and be subject to the same potentially lethal ongoing "international safety orange" scrutiny himself if ever vested with Precedential (Presidential / Commander-in-Chief) powers.

## V. Federal Defendants Are Proper Parties

Defendants now contend the federal defendants "are not responsible for state bail processes." That is both factually and legally incorrect and represents a deep, scandalous lack of accountability and responsibility on the part of the Legislative and Executive Branches of the Federal Government.

**A. Federal Action and Causation.**
RFRA applies to federal actors. The U.S. Treasury's mandate to print the Divine Name and the President's August 25 Executive Order requiring cash bail are federal actions and proximate causes of Plaintiff's burdens.

**B. Federal-State Nexus.**
 Federal funding and regulation shape state and local jail payment systems. 31 U.S.C. § 321; 34 U.S.C. § 10152. Where federal law drives downstream burdens, as it does here with specifications on what constitutes legal tender and what limited, narrow means of payment guarantee us the right to discharge "all debts, public charges, taxes, and dues" (31 US Code §5103) in our United States, especially after President Trump's August 25, 2025 Executive Actions deterring subordinate states and territories from progressing away from cash bail at tremendous penalty of withheld federal funding, RFRA permits suit against federal officials. *Burwell v. Hobby Lobby*, 573 U.S. 682 (2014). Thus, dismissal cannot rest on a newly raised "no-federal-responsibility-at-all" theory.

### C. Uniform Relief.

A single federal ruling under the Supremacy Clause is the only practical means to eliminate cash-only bail nationwide, particularly in the context of a single non-billionaire, sub-deka (sub-dekamillionaire) Pro se Plaintiff. As a sub-deka, Plaintiff cannot possibly be expected to litigate identical claims in 52 jurisdictions; nationwide injunctive relief is appropriate to secure equal protection and access to electronic payment methods (e.g., under Visa, Mastercard Merchant Category Code 9223, without any legal basis for discriminatory MCC category blockage at time of bail or bond payment).

## VI. Defendants' Comparative-Penalty Analysis Fails

Defendants argue that Plaintiff's burdens are trivial compared to those in *Hobby Lobby* and *Yoder*. That is wrong on both law and fact.

### A. Threshold for Substantial Burden.

In *Hobby Lobby*, a $2,000-per-employee fine was enough. Even a single-employee company ("Mini Hobby Lobby") would qualify if levied with a $2,000 fine contrary to religious principles if the firm is closely held with sincere, burdened religious beliefs. Without being exhaustive, here, in the First Amended and even more so in the Second Amended Complaint, Plaintiff faces non-refundable bail premiums of anywhere from $50 - $15,000+ USD, cash wedding gifts totaling thousands of dollars that are personally unusable, and civil fines up to $2,000 USD per day under the Miami-Dade Cashless Prohibition Ordinance—squarely within the range recognized as substantial. In *Yoder*, a modern 2025 AD ~$40 USD fine (charged as $5 back then in 1972 currency) was deemed a substantial interference with faith; Plaintiff endured 28 days in jail and exclusion from commerce for years—*orders of magnitude more severe*.

Please note: Nonrefundable bail bond premiums are strictly encoded and price-controlled in statute in Florida under Florida Statutes 648.33(2), which reads, "<u>It is unlawful for a bail bond agent to execute a bail bond without charging a premium therefor, and the premium rate may not exceed or be less than the premium rate as filed with and approved by the office.</u>" To establish what the bail bond rate is, the Florida Chief Financial Officer's office (Florida Department of Financial Services) states that, "[t]he premium for a State bond is 10% of the amount of bail set

by the Court. The premium for a Federal Bond is 15% of the amount of bail set by the Court."[1] On a $100,000 bond, getting hit with a $15,000 USD nonrefundable bondsman fee (a severe pincer-like deprivation of property or "presumption of innocence" liberty without due process of law that I and millions of other Americans who engage in cashless carry are frequently subject to) is a *hell* of a lot of money to be coerced by the government with as the government carelessly and recklessly tries to compromise and ignore my religious and necessary civigious beliefs. With $15,000 USD, I could register to be on the ballot to run for Governor of Florida or US Senator (which costs $5,656.00 - $10,440.00 USD[2]) instead almost two- to three-times-over to revise the laws that obstruct the sanctity and lifesaving I'm being accused of violating rather than sacrificing such bond uselessly to a bail bondsman when they're not providing any kind of valuable service – I'm already Platonically *Crito*[3]-bonded to appear for Court as a matter of fundamental justice and religious duty as an American.

**B. Comparable Case Law.**

In *American Council of the Blind v. Paulson,* 525 F.3d 1256 (D.C. Cir. 2008), the court held that credit and debit cards are no adequate substitute for cash. Plaintiff faces the inverse problem—being coerced to use cash he can physically see and distinguish but religiously cannot handle. The burden is equally substantial as credit and debit cards remain no adequate substitute for total or near-total exclusion from cash.

**C. Human Impact.**

These policies also invade private life. Plaintiff recently lost a promising relationship because his partner's career in bank management requires daily handling of currency he must avoid. Government policy should not create religious wedges in personal association. Such intrusions illustrate the breadth of the burden RFRA was enacted to prevent.

**VII. RFRA Requires Individualized Assessment**

None of Defendants' cited cases involve a plaintiff facing continuous religious coercion to violate sacred law. Once a substantial burden is alleged, RFRA demands "the most demanding test

---

[1] https://myfloridacfo.com/division/consumers/understanding-insurance/bail-bonds-overview
[2] https://files.floridados.gov/media/709380/2026-qualifying-fees.pdf
[3] https://en.wikipedia.org/wiki/Crito

Motion to File Sur-reply and Sur-reply Responding to Defendant's Reply on First Amended Complaint

9

known to constitutional law." *Hobby Lobby*, 573 U.S. at 695. At minimum, Plaintiff is entitled to a dismissal of this Motion to Dismiss followed by a *Motion for Early Summary Judgment* and an opening for discovery on less-restrictive alternatives—such as a hyphenated or secular motto, polymer currency, or digital-tender designation.

**VIII. Procedural Impropriety of New Arguments in Reply**

The Eleventh Circuit disfavors raising new issues in reply. *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338 (11th Cir. 2005). If the Court declines to strike those arguments, this Sur-Reply should be accepted as the authorized response to preserve fairness.

**IX. The 10 Page Limit on this Sur-reply prevents full and fair briefing**

The Plaintiff petitioned Your Honor Chief Magistrate Judge Matthewman for an expanded page count for this sur-reply on grounds of Brandolini's Law (aka the "Bullshit Asymmetry Principle") and the overwhelming number of newly introduced claims in the Defendants' Reply and was denied. Plaintiff had about 16 pages earlier, and that was before explaining all the appendices. He had to use AI to cut and summarize and there was some significant loss of meaning and briefing depth.

Part of what Plaintiff wished to brief this Court on more completely were the substance and implications of the Appendices, especially **Appendix C** and **D**, which show Plaintiff's evolving understanding and communication with counsel regarding the questions the Defendants are raising regarding raising these claims and other burdens in a timely way without getting hit by res judicata and the significance and substantiality of the Plaintiff's burdens. The Plaintiff does not have enough space to explain those burdens here in the main body of this Sur-Reply and is running too low on time now. The Plaintiff hopes this Court can read and review those attached appendices and find them to be self-explanatory and supportive of this sur-reply. I recognize that this Sur-reply is imperfect but I'm hitting hard and real time and resource constraints on improving it further as a pro se plaintiff.

**X. Conclusion**

Because Defendants' Reply introduces new factual and legal assertions absent from their motion,

and because those assertions lack merit, Plaintiff respectfully requests that the Court:

1. Accept this Sur-Reply as timely filed with the accompanying Motion for Leave;

2. Reject the newly raised res judicata, bail-bond, debit-card, non-responsibility, and warped and misinterpreted comparative *Yoder / Hobby Lobby* penalty arguments;

3. Deny Defendants' Amended Motion to Dismiss;

4. Find that the Plaintiff has a sincere religious belief and has suffered one or more substantial burdens on that sincere religious belief through Government force, executive action, official government policy, and statutes, and officially finally switch this case to a strict scrutiny examination of a least restrictive means of achieving whatever compelling interests Government has legitimate claim to presently here; and,

5. Review and grant the admission of the *Second Amended Complaint*, which is <u>overly ripe</u> for decision and a better basis for further examination and argument; and

**6.** Grant such further relief as is just and proper—including authorization for Plaintiff to remove and protect the sectarian motto and particularly the Name of G-D from currency in his possession to restore his ability to participate in legal-tender commerce without penalty.

Also note: Plaintiff has a cutting kit (scalpel, 6" metal ruler, and self-healing mat) on hand ready and waiting at home to start splicing out *In G-D We Trust* from banknotes immediately after he receives permission of Court or, if necessary, will do so eventually out of religious obligation and necessary limited civilly disobedient defiance after permission to do so religiously is expressly denied.

**Respectfully submitted this 24th day of October 2025.**

s/Plaintiff David Clayman, Still *Pro se*
7930 Palacio Del Mar Drive
Boca Raton, FL 33433-4148
+1 (321) 252 - 9626
david@ingwetrust.org
david@inhashemwetrust.org
david@lifesaverlabs.us
david@clayman.org

## APPENDICES

**Appendix A:** "No truly card-based laundry within miles" letter to counsel, August 23, 2017

**Appendix B:** Docket Entries in *New Doe Child No. 1 v Congress*

**Appendix C:** Timeline of Events in *New Doe Child No. 1 v Congress*

**Appendix D:** Correspondence with Attorney Newdow over time demonstrating substantial burden communication efforts, evidence of substantial burden, defenses from *res judicata* dismissal (inadequacy of representation, conflict of interest in representation, and reliance on counsel's advice on *res judicata*)

**Also Note:** Permission to file Ex Parte Sealed Exhibit requested of Judge Matthewman for in camera review

## CERTIFICATE OF SERVICE – ELECTRONIC AND PAPER SERVICE

I HEREBY CERTIFY that on this 24th day of October, 2025, I served a copy of this motion electronically upon opposing counsel of record and, as required by the rules governing pro se litigants in the Southern District of Florida, subsequently printed and mailed a copy of this filing to the Court by certified mail.

I respectfully preserve an objection that the categorical prohibition on electronic filing and service for even non-prisoner pro se litigants imposes unequal substantial burdens that place pro se parties at a significant and severe disadvantage in the Southern District of Florida and other lagging edge judicial district locales compared with attorneys and represented litigants.

_____
/s/ David M. Clayman
Pro Se Plaintiff