## Appendix C: Timeline of Events from New Doe Child No. 1 v Congress of the United States (Ohio Northern District, 6th Circuit Court of Appeals, and Supreme Court)

**Here's a brief timeline of events that could bear on *res judicata* argumentation.**

**July 2014:** Plaintiff Clayman realized the religious problem with *In G-D We Trust* currency; although he regularly transacted with and relied on cash, he totally stopped using all American cash and coins same-day

**February 2015:** Dr. Newdow, Esq. asked for Plaintiff descriptions, circulating an example template that didn't ask for or prompt disclosure of fact-heavy incontrovertible substantial transactional commercial, associational, or privacy burdens

**December 20, 2015 - July 31, 2017:** Plaintiff Clayman "out of it" and cognitively/mentally highly neurodivergent while being prosecuted misleadingly for separate religious practices and beliefs related to the overriding priority of life preservation, affecting Plaintiff Clayman's ability to meaningfully participate in securing his interests and exercise good judgment in the *New Doe Child No. 1 v Congress* Ohio Northern District and 6th Circuit of Appeals case absent a *guardian ad litem* to support legal reasoning in the best interests of the Jewish case presented by and lived by the Plaintiff Clayman.

**December 20, 2015:** Arrested first time for religious beliefs

**January 20, 2016:** Arrested a second time for religious beliefs

**January 22, 2016:** Arraigned, <u>assigned a $25,000 bond</u>; guards refused to let Plaintiff pay by check, would only accept legal tender cash; family wanted to leave Plaintiff in jail to "teach him a lesson" about the punishing costs and collateral consequences of even righteous civil disobedience, Plaintiff learned family and friends who defer to family's direction can never be wholly relied on to pay bond if Plaintiff is ever arrested. First clear awareness that bond payments could/would be a severe legal problem under legal tender laws and a form of extrajudicial punishment (deprivation of liberty or property without due process of law through compelled extended imprisonment or forced contract with a bondsman) that his inability to pay by a mix of credit, debit, check, or common digital payments made far worse and a form of inherently excessive, totally unaffordable bail.

**Sometime between:** Random guard offered to front Plaintiff payment for bond if paid $200 in *In G-D We Trust* cash as a premium immediately after release. Plaintiff had to refuse to prevent desecration of G-D's Name and protest lack of accommodation for check payment alternative instead. Offering guard probably didn't know Plaintiff's bond was $25,000 USD – a $200 premium would not likely have stood with further disclosure. Offering guard probably assumed bond was less than $1,000 USD. Also, close friends and

other family members refused to cover bond during this time, all deferring back to parental judgment and choice.

**February 16, 2016**: Released on bond payment after parents finally arranged bond after 4 weeks, deciding that Plaintiff had suffered enough and probably "learned his lesson". Plaintiff was instructed that he can't rely on parents (or close friends) to ever bail Plaintiff out again.

**February 29, 2016**: Dr. Newdow, Esq. filed the Amended Complaint without consulting first with Plaintiff Clayman for newly recognized burdens. Plaintiff Clayman was unaware amendments to pleadings were possible and remained out of it mentally throughout this time.

**November 30, 2016:** Motion to dismiss granted in District Court. Factual record fully foreclosed.

**January 10, 2017:** Appellant Brief filed in 6th Circuit Court of Appeals

**June 1, 2017:** Plaintiff Clayman sent Attorney Newdow the **"Four Different Responses (Happiness, Association, "FREADOM", and Cash's Privacy"** email, clearly citing incapacity on laundry burden, freedom of association violation in being barred from dancing at cash-only venues, refusal of the Chicago Public Library to issue Plaintiff a replacement library card, and Plaintiff's total loss of commercial transactional privacy from government or industrial snooping and prying.

**June 3, 2017**: Plaintiff Clayman sent Attorney Newdow the "**Here, this sounds better: The Bond Argument**" email, clearly citing his experience being held in jail for 28 days for no reason other than the jail's refusal to accept a debit card payment or provisionally accept and vet a personal check and his utter religious inability to use cash, with subsequent enjailed religious violations in Cook County's failure to provide kosher food, resulting in Plaintiff's repeated starvation diet, secondary to this In G-D We Trust conflict. Plaintiff Clayman firmly believes he discussed the jail experience earlier with Attorney Newdow, but Clayman doesn't have any evidentiary records of that available from his *adam@clayman.org* email archive. Plaintiff may have suffered some data loss in switching between different email accounts he no longer has archives for.

**June 16, 2017:** *New Doe Child No. 1 v Congress* Appeals case argued before 6th Circuit

**August 22, 2017**: Forced for the first time to use coin-based laundry at risk of losing job following three weeks of no access to laundry despite diligent efforts to avoid coin-based laundry dependency in housing search; first use of American physical currency in three years. More and more substantial burdens of many varieties would arise after factual record on *New Doe Child No. 1 v Congress* foreclosed in 2016.

**May 29, 2018:** Appeals case decision decided and filed by appellate judges

**July 4, 2018**: Plaintiff Clayman sent Attorney Newdow the "**Synthesizing a Summary: 828 Words (An Attempt)**" email, **clearly summarizing his experience for Supreme Court** *writ of certiorari* **petition review**, including his experiences being jailed for 28 days unnecessarily, of going hungry and thirsty due to IGWT printed on cash, of being forced to starve or eat unkosher food in Illinois jail secondary to his protection of *In G-D We Trust* currency, of being unable to launder his clothes in lower-cost affordable Chicago apartment housing, of being turned away from libraries, bookstores, salsa clubs, bars, restaurants,

laundromats, a bicycle shop, and more, his loss of privacy, infringements on the right of free association, and more – none of which were "minor inconveniences", all of which were clearly and convincingly substantial burdens. None of these arguments, to Plaintiff's knowledge, reached any Supreme Court petition. Plaintiff found a February 29, 2019 8th Circuit writ of cert petition on the SCOTUS docket search but nothing petitioned into the docket from the 6th Circuit where Plaintiff was minimally represented. Attorney Newdow told Plaintiff in a response email, "I have to decide whether to put this in the current petition, risking our not being able to have you as a plaintiff in the 11th Circuit (Florida) case or waiting to use it (and decreasing our chances of prevailing in the Petition for Rehearing in the 6th Circuit. I'll seek some advice from the true experts." While Plaintiff expressed his preferences clearly, Plaintiff Clayman had to rely on counsel to make that determination of when and how to plead any of these claims without sacrificing these claims under binding *res judicata*. Based on these representations from counsel, Plaintiff never expected these claims would be subject to being barred under res judicata in the 11th Circuit (Florida).

**June 10, 2019**: Attorney Newdow's 8th Circuit writ of certiorari attempt was denied by SCOTUS. There was absolutely no reference to Plaintiff Clayman's position, condition, or experience in that *writ of cert* petition, as among other things it was from a different Appeals Circuit district than Clayman's very minimal, conflicted 6th Circuit case representation.