David Morris Clayman / אדם דוד קליימן / דוד משה קליימן, *Pro se*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **David Morris Clayman** ( / אדם דוד / דוד משה קליימן), Plaintiff, vs. UNITED STATES OF AMERICA et. al. | CASE NO. 9:25-CV-80890-WM<br><br>**PLAINTIFF'S 59(E) MOTION TO ALTER OR AMEND ORDER DENYING RETURN OF SACRED NAMES OF G-D**<br><br>☐ **Completed Full Prefiling Checklist Before Printing** |

# PLAINTIFF'S 59(E) MOTION TO TO ALTER OR AMEND ORDER DENYING RETURN OF SACRED NAMES OF G-D

## I. INTRODUCTION

Plaintiff respectfully moves under Federal Rule of Civil Procedure 59(e) to alter or amend this Court's September 29 2025 Order [DE 49] denying his Motion to Protect the Sacred Names of G-d [DE 40].

This motion seeks narrowly tailored, neutral relief: that the Court permit the return to Plaintiff—and authorize the retrieval or certified respectful handling of any Defendant-held copies—of physical paper filings containing the written Names of G-d, so that Plaintiff may fulfill his religious obligation under Jewish law to ensure their reverent disposition.

This accommodation imposes no administrative burden, no theological endorsement, and parallels long-recognized judicial practice in returning religious artifacts introduced in evidence.

## II. STANDARD UNDER RULE 59(e)

Rule 59(e) allows alteration or amendment of an order to correct a manifest error of law or fact or to prevent manifest injustice. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).

Here, amendment is necessary to correct a misunderstanding that Plaintiff's request constituted religious endorsement rather than a neutral accommodation under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq., and to prevent manifest injustice by avoiding government-mandated desecration of sacred text.

## III. CLARIFICATION REGARDING ACCIDENTAL INCLUSION OF SHAIMOS

The appearance of sacred Names ("*Shaimos*") in Plaintiff's filings was **unintentional**. Most instances arose from (1) AI-drafting autocompletions that escaped sight-review prior to printing, and (2) submission of complete religious source materials that Plaintiff believed were required under the Federal Rules to avoid misrepresentation of controlling religious authority.

Had Plaintiff foreseen the consequence, he could have redacted or "rectangled" the Names before printing. Hindsight is 20/20. He now bears under Jewish law an ongoing **chain-of-custody responsibility** for every printed page bearing the Divine Name.

This motion seeks to reconcile that duty with the procedural requirements of filing and service—a secular, administrative correction consistent with RFRA's purpose of removing unnecessary burdens on sincere faith.

## IV. MATERIAL ERROR OF LAW: RETURN OF RELIGIOUSLY SENSITIVE MATERIALS IS PERMISSIBLE

The Order held that granting relief would "infringe the Establishment Clause as it would result in the Court 'officially preferring' one religious denomination over another." (DE-49). Respectfully, this overstates the risk.

Federal courts routinely handle and return religious articles—Bibles, rosaries, prayer rugs, wooden crosses—without establishing religion. See *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (accommodation of religious exercise is not a violation of the Establishment Clause).

Returning Plaintiff's own sacred filings is no different: a neutral act of record management that neither endorses nor adjudicates theology.

*If a wooden cross introduced in evidence were later returned to its owner for reverent*

Plaintiff's 59(e) Motion to Alter or Amend Order Denying Return of Sacred Names of G-D

*keeping, no one would suggest the Court had 'established' Christianity. So too here.*

## V. MANIFEST INJUSTICE AND RFRA REQUIREMENTS

Under RFRA, the Government may not impose a substantial burden on religious exercise unless it employs the least restrictive means to serve a compelling interest. 42 U.S.C. § 2000bb-1(b). Destruction of sacred filings serves only administrative convenience—hardly a compelling interest.

Less restrictive means are available: provide notice and allow retrieval or certified respectful handling.

As *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014), explains, the Government may not force an adherent to choose between compliance with law and adherence to faith. Here, service and filing rules compelled Plaintiff to generate sacred material; refusing its return now forces desecration.

Comparable accommodations exist—the Native American Graves Protection and Repatriation Act, 25 U.S.C. § 3001 et seq.; the U.S. Flag Code, 4 U.S.C. § 8. Sensitivity toward sacred items is both lawful and expected in a pluralistic democracy.

## VI. RELIEF REQUESTED

Plaintiff respectfully asks that the Court amend its Order [DE 49] to include:

1. **Return of Court-Held Filings.** Upon final disposition, the Clerk shall notify Plaintiff and permit retrieval or mailing (at Plaintiff's expense) of original paper filings containing the written Names of G-d for religiously appropriate disposition.

2. **Notice and Return of Defendants' Copies.** Within 30 days after final disposition, Defendants and their counsel shall (a) notify Plaintiff of any remaining physical copies of his filings containing the Names of G-d, and (b) either (i) return them to Plaintiff or (ii) certify under penalty of perjury that they were disposed of through a neutral method consistent with this accommodation (e.g., deposit in a *genizah*, Jewish cemetery, or archival transfer to the Smithsonian or National Archives).

3. **Neutral Accommodation.** This procedure mirrors the routine return of religious artifacts and is consistent with *Cutter*, 544 U.S. at 720.

Plaintiff's 59(e) Motion to Alter or Amend Order Denying Return of Sacred Names of G-D

3

4. **Clarification of Non-Endorsement.** Nothing herein requires Defendants or Court officials to affirm Plaintiff's beliefs; the acts of notice and return are purely administrative and religiously neutral.

## VII. ANALOGY TO EVIDENTIARY RETURN OF RELIGIOUS ARTIFACTS

Courts routinely release religious items after trial to their owners. See *United States v. Bovio*, 708 F. Supp. 2d 579 (E.D.N.Y. 2010) (return of religious objects to family post-proceedings as separate from legitimately confiscated items). Such returns reflect respect for conscience, not endorsement. The same principle applies to the sacred pages in Plaintiff's filings, which function like a Bible used for an oath—handled with care but without entanglement.

## VIII. ADDITIONAL CONSIDERATION: SERVICE-CREATED BURDEN

The burden here is exacerbated because Plaintiff was **legally required** to mail paper copies under Rules 4 and 5. Those mandatory acts produced additional sacred copies in government custody—copies that would not exist but for service requirements. RFRA forbids the Government from compelling the creation of religious objects and then denying their reverent treatment. See *Hobby Lobby*, 573 U.S. at 726. Providing notice and return is therefore essential to avoid ongoing violation.

## IX. PLAINTIFF'S OFFER TO SUBMIT TRACTATE ROSH HASHANAH 18B AS CONTEXTUAL EVIDENCE OF SINCERITY

Plaintiff further informs the Court and Defendants of his intention to submit a **bound copy of Tractate Rosh Hashanah**, index-tabbed to folio 18b, the Talmudic passage delineating the ancient debate over inscribing and preserving the Divine Name on physical objects. This text directly illuminates the religious foundation of Plaintiff's belief and chain-of-custody obligations.

Holding the tractate in physical form —as it has been transmitted for centuries—may assist the Court in evaluating the **sincerity** of Plaintiff's faith, which RFRA protects without regard to majority orthodoxy. See *Hobby Lobby*, 573 U.S. at 725.

However, Plaintiff cannot ethically transmit or file a bound volume that contains multiple sacred

Plaintiff's 59(e) Motion to Alter or Amend Order Denying Return of Sacred Names of G-D

4

Names until the Court formally commits to handle and return such religious artifacts with the respect requested here. Without those assurances, submission would extend Plaintiff's religious liability and risk further desecration through ordinary file-disposal protocols.

Accordingly, this Rule 59(e) motion seeks not only to correct a legal misapprehension but to establish a procedural framework that will permit Plaintiff to safely submit the Tractate Rosh Hashanah 18b volume as contextual evidence once assured that it will be treated as a religious artifact subject to return or certified custody. Such a framework would enable the Court to assess Plaintiff's faith sincerely and neutrally, consistent with RFRA and the First Amendment.

## X. REQUEST FOR PRESERVATION ORDER AND CLARIFICATION OF APPEALABILITY

Plaintiff respectfully notifies the Court that, should this motion be denied, he is religiously obligated to pursue appellate review vigorously before the Eleventh Circuit and, if necessary, the Supreme Court. Jewish custom and law imposes continuing personal responsibility for the preservation of sacred texts; failure to prevent their desecration would constitute a violation of sincere religious beliefs and conscience. Accordingly, Plaintiff could not accept a denial of this motion without seeking correction through appeal. And the Plaintiff finds it mind-boggling to think that the 11th Circuit or SCOTUS would not reverse this Court on any adverse decision on this request under RFRA and 1st Amendment jurisprudence.

To ensure that no irreversible harm occurs before appellate consideration, Plaintiff requests that the Court enter a temporary preservation order providing that:

"Neither the Court nor the Defendants shall destroy, discard, or otherwise alter any physical records or paper copies containing the Names of G-d that Plaintiff considers sacred originated from or were served by Plaintiff until all appellate proceedings—whether interlocutory or post-judgment—have concluded and any final mandate has issued and survived every last option for appeal."

This limited preservation order would merely maintain the status quo, impose no prejudice, and protect both the Court and Defendants from potential claims of spoliation while higher courts review the matter. It would ensure that sacred materials remain intact pending final judicial

Plaintiff's 59(e) Motion to Alter or Amend Order Denying Return of Sacred Names of G-D

guidance.

Plaintiff also respectfully requests that the Court clarify whether its forthcoming ruling on this Rule 59(e) motion is immediately appealable as an interlocutory order under the *Cohen v. Beneficial Industrial Loan Corp.* collateral-order doctrine, or whether review must await final judgment. A clear statement of appealability will permit orderly invocation of appellate jurisdiction and guarantee that all parties understand the procedural posture.

By addressing appealability and preservation now, the Court can both safeguard the evidentiary record and avoid unnecessary emergency motions during any subsequent appellate process.

## XI. CONCLUSION

This matter concerns conscience, not preference. Plaintiff seeks only to prevent the irreversible desecration of documents containing sacred Names that he was compelled or felt compelled by federal procedure to produce. A modest amendment to permit notice, retrieval, and preservation would prevent manifest injustice, uphold RFRA's and the 1st Amendment's promise of religious liberty, and affirm the Court's neutral respect for all faiths and religious artifacts.

Respectfully submitted this 27th day of October 2025,

s/Plaintiff David Clayman, Still *Pro se*
7930 Palacio Del Mar Drive
Boca Raton, FL 33433-4148
+1 (321) 252 - 9626
david@ingwetrust.org
david@inhashemwetrust.org
david@lifesaverlabs.us
david@clayman.org

**APPENDICES**

None

**CERTIFICATE OF SERVICE – ELECTRONIC AND PAPER SERVICE**

I HEREBY CERTIFY that on this 27th day of October, 2025, I served a copy of this motion electronically

Plaintiff's 59(e) Motion to Alter or Amend Order Denying Return of Sacred Names of G-D

6

upon opposing counsel of record and, as required by the rules governing pro se litigants in the Southern District of Florida, subsequently printed and mailed a copy of this filing to the Court by certified mail.

I respectfully preserve an objection that the categorical prohibition on electronic filing and service for even non-prisoner pro se litigants imposes unequal substantial burdens that place pro se parties at a significant and severe disadvantage in the Southern District of Florida and other lagging edge judicial district locales compared with attorneys and represented litigants.

_____

/s/ David M. Clayman
Pro Se Plaintiff

**CERTIFICATE OF CONFERRAL**

Plaintiff conferred with opposing counsel regarding this matter on October 27, 2025. Opposing counsel stated that they oppose the motion on the grounds that "Courts have consistently held that a motion for reconsideration, whether construed as a motion to alter or amend the judgment or a motion for relief from judgment, is an inappropriate vehicle to reargue an issue previously addressed by the court when the motion merely advances new arguments or supporting facts that were available at the time of the original motion."

However, as set forth in Section II, *Standard Under Rule 59(e)*, Plaintiff contends that this motion falls within the recognized exception permitting relief to correct a manifest error of law or fact or to prevent a gross injustice. By analogy, if a court were to dispose of crosses submitted as trial exhibits by burning them, it would plainly recognize such conduct as a gross injustice. So too here: the reckless shredding of fragments bearing the Name of G-d—materials that Plaintiff holds sacred and that were within his chain of custody—would constitute a comparable desecration in the sincere belief of the Plaintiff. These pages are as sacred to Plaintiff as a crucifix or set of rosary beads or holy relic would be to a Catholic priest. The case is more fully argued above.

_____

/s/ David M. Clayman
Pro Se Plaintiff

David Clayman / In 6 We Trust
7930 Palacio Del Mar Drive
Boca Raton, FL 33433-4148

Royal Palm P&DC 330
MON 27 OCT 2025

9589 0710 5270 3399 7282 00

CERTIFIED MAIL

Clerk of Courts
US District Court for the Southern District FL
701 Clematis Street, Room 202
West Palm Beach, FL 33401

RDC 99

Retail

33401

$8.30

U.S. POSTAGE
FCM LG ENV
BOCA RATON, F
OCT 27, 2025

S2324A502605-50