David Morris Clayman / אדם דוד קליימן / דוד משה קליימן, *Pro se*

FILED BY _____ D.C.

NOV 17 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **David Morris Clayman** ( / אדם דוד קליימן),<br>Plaintiff,<br><br>vs.<br><br>**UNITED STATES OF AMERICA**<br>et. al. | **CASE NO. 9:25-CV-80890-WM**<br><br>**PLAINTIFF'S MOTION FOR EXTENSION OF TIME ON REPLY**<br><br>☑ **Completed Full Prefiling Checklist Before Printing** |

## PLAINTIFF'S MOTION FOR EXTENSION OF TIME ON REPLY TO RESPONSE IN OPPOSITION FOR RECONSIDERATION RE ORDER ON MOTION FOR MISCELLANEOUS RELIEF

Plaintiff David Morris Clayman, appearing reluctantly pro se, respectfully moves pursuant to Federal Rule of Civil Procedure 6(b)(1)(A) and Local Rule 7.1(c)(2) for (1) a short extension of time to file a Reply in response to **Defendants' Response in Opposition RE: Motion for Reconsideration RE: Order on Motion for Miscellaneous Relief**.

Plaintiff shows good cause as follows:

## I. NEED FOR EXTENSION OF TIME

Plaintiff respectfully requests **3 extra days** to prepare a comprehensive Reply that addresses Defendant's Opposition with a revised deadline of **Friday, November 14, 2025**.

The reasons for this extension request are in the attached Appendix. My apologies for the extent of the explanation below in the appendix. I am very frustrated about the technology and care gaps in the world. The urgent need is starting these conversations about faster neighborhood emergency response as quickly as possible, both as a support and adjuvant for Safeword™ and for its own sake for a wide variety of neighborhood emergencies that happen over a lifetime.

A three-day extension would allow launching these conversations at a wider level rather than being immediately constrained to writing for hours about apparently citing a fictitious legal case

through ChatGPT drafting for the second time. That explanation requires time to fully apologize, explain systematic prevention from a software engineer's pro se systems engineering perspective, and adjust arguments to fallback positions—potentially arguing that returning the Names of G-D in this form may be a federal case of first impression rather than something with direct legal precedent.

## II. CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(2), Plaintiff emailed Assistant U.S. Attorney Kelsi Romero on Monday, November 10th, 2025 to confer regarding this motion. Defendant does not oppose the extension of time to November 14th, 2025.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting Plaintiff an extension of time to November 14th, 2025 to file his Reply.

Respectfully submitted this 11th day of November, 2025.

s/Plaintiff David Clayman, Still *Pro se*
7930 Palacio Del Mar Drive
Boca Raton, FL 33433-4148
+1 (321) 252 - 9626
david@ingwetrust.org
david@inhashemwetrust.org
david@lifesaverlabs.us
david@clayman.org

**CERTIFICATE OF SERVICE – ELECTRONIC AND PAPER SERVICE**

I HEREBY CERTIFY that on this 11th day of November, 2025, I served a copy of this motion electronically upon opposing counsel of record and, as required by the rules governing pro se litigants in the Southern District of Florida, subsequently printed and mailed a copy of this filing to the Court by certified mail.

I am still preserving my objection to the lack of electronic filing access by pro se filers. I will need to spend time now printing and driving to the post office and back instead of working on the Lifesaver Labs projects Neighbor 911™ and Safeword™.

/s/ David M. Clayman
Pro Se Plaintiff

**APPENDIX 1: EXPLANATION RE URGENCY AND POTENTIAL OF NEIGHBOR 911™**

Plaintiff is proposing a Neighbor 911™ emergency response service designed to dramatically reduce emergency response times with the help of neighbors. This concept emerged from work on Safeword™ and neighbor naloxone delivery, recognizing that neighbors can reach someone's door for a wellness check or intervention requiring limited training in 1.5-2 minutes for everything from bedroom consent conflict to drug overdose to a child struggling to swim in drowning response in a pool caught by AI from a security cam to cardiac arrest CPR alerts from a smartwatch, compared to typical police response times of 5-7 minutes in urban areas. When someone calls a safeword during a bedroom consent conflict, or suffers any of the emergencies above, waiting 10 minutes for official help while locked in an apartment with someone who isn't respecting boundaries is far from ideal.

The technology's immediate potential extends beyond consent conflicts. In cardiac arrest situations, where each minute without CPR increases mortality by 10%, nearby community members could intervene as modern "Minuter Responders" (Minutewomen/Minutemen) within minutes rather than leaving victims hypoxic and dying. The broader vision includes coordinating community action on various health and safety issues: discouraging brain-damaging collision sports like tackle football in schools, reducing youth vaping and nicotine addiction, and supporting smokers through quit attempts with walking buddies.

Plaintiff views Neighbor 911™ as fundamental survival infrastructure for community security and health, delivered through mobile, AR, and AI applications. The goal is launching an online community to collaborate on this concept, making development less solitary and resource-constrained. This should be built as an ongoing local, national, and international emergency development project allowing worldwide contribution and benefit. While the "In G-D We Trust" litigation matters greatly to Plaintiff, getting Neighbor 911™ launched takes priority given the lives potentially saved by reducing emergency response from 10 minutes to under 2 minutes in densely populated areas.

The future vision includes AI-activated Neighbor 911™ deploying simultaneously and seamlessly through or in partnership with 911 calls for all manner of emergencies including cardiac arrest—two qualified neighbors rushing or running to the scene within 15 seconds while a drone delivers an AED from the nearest fire station. They break down the front door barrier

together or find another way in if they need to, then the first responder starts CPR, the second awaits the AED, and within 2 minutes defibrillation begins. Neighbor 911™, one day with AR support, does its best to help guide them on each step. Similarly, when someone feels uncomfortable about consent quality during intimate situations, they could call "Red Light," prompting their partner to stop and dress while neighbors arrive for a wellness check within minutes, with police potentially following unless both parties certify they're separating for the night. These protocols require refinement with security, police, and health experts, particularly regarding call cancellation procedures and domestic violence prevention—the details around safeword reversibility are crucial for both preventing domestic violence and gathering evidence.

Beyond emergencies, Neighbor 911™ provides infrastructure for other civic initiatives. This includes increasing voter turnout from the unacceptable 65.3% of eligible voters in 2024 to Australia's mandatory voting level of 89.82%, and organizing advocacy for suffrage expansion to over 36-37 million disenfranchised Americans: approximately 30+ million youth (including those old enough to be sent to war by the Commander-in-Chief-Elect before having voting rights), 4+ million incarcerated individuals, and 2.7-2.8 million territorial residents. Suffrage expansion for teens, criminals, and territorial residents represents a core element of Plaintiff's "civigion" (civic religion—see civigion.us). When those disenfranchised voters are factored into our voting rates, we're really closer to a very legally shitty 56.4% participation rate (use of forbidden curse word here deliberate, to emphasize just how shitty this is). Imagine if we sent out a survey on who should wield the power to starve the American people of SNAP funds in a government shutdown like what we're just coming out of, a shutdown that threatened the food security of around 42 million Americans, and only about 56 in 100 responded to dictate who should be the Starver-in-Chief, with 9 people kicked out of the polling booth and respondent population just because, while everyone recognizes that they're starving, they're teens, criminals, or territorial residents who can't have a valid, critical opinion on the question of which Starver-in-Chief wields veto power over national starvation.

*Suffrage ⇌ Suffering*

The Plaintiff wants to drill that expression of voter chemistry, as as essential "theory of change" (化学), into all endemic civigion everywhere, from the United States to every last strand and sect of civic religion in China (中国), and hopes that calmunity efforts like Neighbor 911™ code criss-crossing neighborhood borders, langauge barriers, and app stores can help us get there. In

the design specs for Neighbor 911™, I've already had to explain how we as an international calmunity can't get Neighbor 911™ branched and delivered as quickly into 中国 because of technical barriers the Communist Party erected in the Great Firewall of 中国 to keep democratic suffrage ideals out and squash free expression in neighborhoods. A huge part of what I imagine for Neighbor 911 on voting registration, voting week, and other forms of suffrage protest voting and democratic support would need to get cut out before the Communist censors in 中国 would let neighbors launch and expand Neighbor 911 there. I don't want to create two versions of Neighbor 911, one democratic for the free world and one authoritarian for places like the Российская Федерация (the Russian Federation) with fake, very heavily rigged, tortured elections and China with partly rigged local elections and no real national elections at all. And the sad thing is that in many ways the earliest conceptual model of Safeword™ was articulated *there*, in and from 中国, as a way for me to find a way to protect students from fairly imminent future bedroom consent conflict harm when coming to study in United States or Canada, and Safeword™ and neighbor naloxone delivery is leading to Neighbor 911™

Notably, any State can extend suffrage to a lower voting age and to reintegrants, including former convicts. If Neighbor 911™ reaches saturation in Florida, I hope Florida can lead the way in lowering the voting age to 13.0 and reintegrating reintegrants with the right to vote, even before all restorative fines, fees, costs, restitution, and any other legal financial obligations are fully afforded and paid. As for teens, the connection between emergency response and suffrage advocacy is direct: if conscientious teens can volunteer, train, and respond competently to moderately complex emergencies as Minuters, they surely possess sufficient developmental maturity—cognitively and physically—to vote on which emergency responders and officials should address major problems. Many divine religions consider teens full adults, as mine does, and there's no principled reason under civigious RFRA (see https://civigion.us/legal-professionals) or religious RFRA American civic society should continue excluding teens from suffrage given how much they suffer and how important their generational needs are for elected officials to address responsively and not disregard their hunger, their often very literal hunger, with impunity.

I need a few more days to get closer to a public release of the Neighbor 911™ proposal. Please grant this three (3) day extension of time request.

NOTE: I have no idea yet if Neighbor 911 will be successfully built or take off from an adoption perspective, but I have to try calmunicating the service opportunity as soon as possible, on an emergency basis, as it may mitigate so many 911 calls.

MIAMI FL 3 **Retail**

12 NOV 2025

U.S. POSTAGE PAID
FCM LETTER
BOCA RATON, FL 33
NOV 12, 2025

**$6.37**

S2324A502805-50

33401

RDC 99

INSPECTED

33401-511352

David Clayman – In G We Trust
930 Palacio Del Mar Drive
Boca Raton, FL 33433-4148

Clerk of Courts
US District Court for Southern District FL
701 Clematis Street, Room 202
West Palm Beach, FL 33401

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

9589 0710 5270 3399 7303 26

