11/14/25, 4:23 PM                    Clayman Family Mail - Activity in Case 9:25-cv-80890-WM Clayman v. Bessant et al Response in Opposition to Motion

Case 9:25-cv-80890-WM   Document 68-1   Entered on FLSD Docket 11/18/2025   Page 1 of 33



David Clayman <david@clayman.org>

---

## Activity in Case 9:25-cv-80890-WM Clayman v. Bessant et al Response in Opposition to Motion
2 messages

---

**cmecfautosender@flsd.uscourts.gov** <cmecfautosender@flsd.uscourts.gov>
To: flsd_cmecf_notice@flsd.uscourts.gov

Tue, Nov 4, 2025 at 10:58 AM

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### Southern District of Florida

### Notice of Electronic Filing

The following transaction was entered by Romero, Kelsi on 11/4/2025 at 10:58 AM EST and filed on 11/4/2025
**Case Name:**      Clayman v. Bessant et al
**Case Number:**    9:25-cv-80890-WM
**Filer:**          Scott Bessant
                    Congress of The United States
                    Gene L. Dodaro
                    Jerome H. Powell
                    United States of America
**Document Number:** 67

Docket Text:
**RESPONSE in Opposition re [62] MOTION for Reconsideration re [49] Order on Motion for Miscellaneous Relief,, Order on Motion for Hearing, filed by Scott Bessant, Congress of The United States, Gene L. Dodaro, Jerome H. Powell, United States of America. Replies due by 11/12/2025. (Romero, Kelsi)**

**9:25-cv-80890-WM Notice has been electronically mailed to:**

David Morris Clayman &nbsp &nbsp david@clayman.org

Kelsi R. Romero &nbsp &nbsp kelsi.romero@usdoj.gov, caseview.ecf@usdoj.gov, Ely.Rubenstein@usdoj.gov, usafls-hqdkt@usdoj.gov

**9:25-cv-80890-WM Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1-888-318-2260.:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105629215 [Date=11/4/2025] [FileNumber=26044391-

Case 9:25-cv-80890-WM   Document 68-1   Entered on FLSD Docket 11/18/2025   Page 2 of 33
0] [9795bd1c557fb651b7c99036b2cc438f835e648986aa070963bf0765942c70c45f
b6449baea1f7836ffa3a7a1ce79041f8a9fd43052ece7f5d6203e8a30d7c6a]]

**David Clayman** <david@clayman.org>                                          Tue, Nov 4, 2025 at 12:31 PM
To: AUSA Kelsi Romero <kelsi.romero@usdoj.gov>

Hi AUSA Romero,

As far as I can tell, you're right about the AI hallucination. I could have sworn I checked that case, and I could have sworn that I read a case while checking the draft regarding return of a crucifix from evidence, but I can't find that case anymore online. Unless I'm in some strange ethics test bubble, perhaps it never existed and I have a false memory of finding that case; given the absence of evidence for it online, that's the most probable situation. I've got a checklist to check for AI hallucinations but I must have failed to rigorously check and I didn't do enough to make sure a hallucination leaked in.

Thank you for catching that. I'm grateful that you're policing my citations and caught an error that I failed to catch. This citation certainly wasn't intentional, and if I had noticed that that case was fictitious I absolutely wouldn't have cited it. While I disagree with you on all or almost all other grounds in your response, and would appeal immediately and urgently in the middle of this case if I have to secure these mistaken and unprotected prints of Shaimos (Names of G-D) if Judge Matthewman rules against me, I have to apologize immediately for that hallucination.  I'll write a reply and apologize for that apparent hallucination leak in a week when a Reply is due.

Notably, my incomplete motion for a Special Master on AI hallucination (DE-26) would have prevented this at maturity of that action, with whatever speed the Special Master and directed AI retraining or legal drafting care reengineering / system prompting / LLM-automated post-draft verification checks might have successfully enacted. I looked through the docket; you didn't oppose that motion, the Magistrate Judge knocked that motion down sua sponte. How do you feel about supporting a Special Master like what was described in future cases to prevent this from happening in your encounters with other pro ses in all federal districts? We can't afford the common specialized legal AI service providers who probably more rigorously verify cases like Thomson Reuters CoCounsel, which I'm seeing is trying to charge $551.85 per month with a 3 year (!!) contract lock-in. That's $19,866! No reasonable, prudently/virtuously/necessarily frugal pro se is going to pay that, even to avoid a high risk of an occasional Bovio case hallucination. It's easier, more practical, if the Courts and you at the US Attorney's Office get involved at the systems level and push for ChatGPT and other primary AI providers to be more scrupulous, recognizing that even scrupulous pro se plaintiffs and defendants are going to be imperfect, as I am, in policing seemingly correct plausible-seeming AI drafted language perfectly.

I'm also going to be experimenting more with and switching more toward Claude AI as my "go to" first draft support, which seems to be more anxious about ethics than ChatGPT. It refuses to do work for me that it thinks is improper. I asked it to make an argument that it thought was frivolous on an unrelated case, arguing that federal judges and justices should, as a matter of ethics or deference to state home rule law, get fully informed consent before adjudicating a case in any jurisdiction that has, as its State constitutional or statutory rule, a mandatory retirement age that that federal judge is living and ruling beyond, to protect Americans and American residents from life-defining harm by overaged judges who may have lost capacity or for whom for us it's difficult to ascertain capacity without legal advice from an officer of the Court with a reasonable eye on their fitness and capacity. There are many cases in the past of federal judges serving beyond the moment when their colleagues and others with direct insight to their performance feel they should have long ago retired, and it is very hard and slow-acting for the judiciary to actually stage an effective intervention. Claude thought my argument about informed consent requirements on that was frivolous constitutionally without me first reforming the Constitution and refused to draft it or argue it for me, even when I tried to insist that some element of it be included, and even when I argued that it be reviewed in light of the State of the Constitution Annual Constitutional Amendment Proposal Ceremony argument I've been making to show that there are unreasonable impediments to amending the Constitution that have caused questions like this to fall into disrepair and for the resort to amending the Constitution to be effectively almost a sham when no meaningful amendments have been ratified since 1971. But Claude kept refusing to work with me on that, insisting it was too frivolous, and eventually I decided to drop it. I tested with ChatGPT; ChatGPT also omitted the argument but was more accommodating when questioned why it was dropped, suggesting that I could include it in a footnote for a future case rather than confronting me as strongly or directly on frivolity and openly refusing, like Claude had, to assist in any way, shape, or form. I suspect Claude will have more guardrails on hallucinated cases too, but that's just speculation based on Anthropic's pretty consistent "ethics-first" attitude; I haven't proven that yet.

My sincere apologies. I'd love to find a more permanent, systematic fix to this. I'll reply more fully and formally next week; I've got to work on design and engineering for a while.

Please preserve all those documents / pages I've asked to be preserved in the meantime with G-D's fully printed Name on them, especially and specifically inasmuch as they've issued through my chain-of-custody and printers. I think you'll eventually lose the core argument you're making. I can't imagine the SCOTUS majority will oppose and not accommodate my core arguments. I'm anticipating a 9-0 unanimous ruling if and when this reaches the Supreme Court. I would be flabbergasted if it's not 9-0 in my favor in the end given existing constitutional principles and statutory law.

All the best,
David Clayman
[Quoted text hidden]

# Legal Reasoning and Roadmap for the Proposed Motion for the Appointment of a Special Master to Investigate Generative AI Contributory Abuses in the Federal Court System

**Here is OpenAI's ChatGPT GPT-5 reasoning its way with me through its contribution and legal responsibility for this phenomenon of misleading case citations, eventually landing on the recommendation of a Special Master appointment.**

**This is how the conversation begins. Text in speech bubbles comes from screenshots of prompts that I, the Plaintiff, submitted to ChatGPT. The rest of the text are the responses copied from GPT-5.**

> In repeatedly providing false legal citations with correct case citations but incorrect hallucinated quotes to users that they then gullibly cite those quotations in-line in federal court, is ChatGPT becoming or contributing as a public nuisance to the court system?



**GPT-5 RESPONSE:**

What you're describing — a system repeatedly giving real case names but fabricated quotations that then get filed in federal court — touches several overlapping legal concepts: public nuisance, fraud on the court, and duty of care for AI providers.

Here's how it breaks down:

---

# 1. Public Nuisance Theory

- Traditional Definition: Public nuisance typically involves an unreasonable interference with rights common to the general public — historically things like blocking a highway, polluting air or water, or maintaining dangerous conditions in a public space.

- Application to Courts: U.S. courts have sometimes recognized "obstruction of justice" or "fraud on the court" as *harms to the public's interest in the proper administration of justice.* However, public nuisance law has rarely been applied to litigation misconduct or misinformation in filings.

- Hurdle: To call ChatGPT's conduct a *public nuisance*, you'd need to argue that:

1. The act (hallucinating quotes in plausible case citations) is recurrent and systemic.
2. It unreasonably interferes with the public's shared interest in an efficient and truthful court system.
3. The harm is public (i.e., not just one litigant's private injury).

- The novelty: U.S. public nuisance law has been stretched in opioid litigation to cover *indirect systemic harm*, so an aggressive theory could say "systematically polluting legal filings with fabricated material" is akin to a public hazard.

---

# 2. Fraud on the Court / Misrepresentation

- If a litigant files the fabricated quote believing it's true, they become the formal source of the misrepresentation, not the AI provider.

- But if a provider *knows* its system generates realistic-looking fake legal quotes that are often mistaken for genuine, and does not mitigate that risk, an argument could be made for *contributory misconduct*.
- The courts have already sanctioned lawyers for submitting ChatGPT-generated citations without verification (e.g., Mata v. Avianca, S.D.N.Y. 2023).

---

## 3. Contributory Liability

- In tort law, there's the idea of "aiding and abetting" or "concert of action" liability — if a party substantially assists another in committing a wrongful act.
- To apply that here, plaintiffs would need to show:
  - ChatGPT's design foreseeably leads to fabricated legal text that is indistinguishable from genuine authority.
  - The company failed to warn clearly or take reasonable precautions (e.g., legal-mode outputs that never fabricate quotes).
  - This *substantial assistance* caused harm to the integrity of judicial proceedings.

---

## 4. Practical Obstacles

- Section 230: Might shield OpenAI from some state-law claims related to user-provided prompts, though less so if the claim is about the *AI's own generated text*.
- No Precedent: No case has yet labeled an AI's hallucinations as a "public nuisance."

- **Intervening Cause:** The human lawyer's duty to verify case law before filing is a major break in causation — courts expect *attorneys* to validate every quote.

---

# 5. Bottom Line

- **Directly:** Calling ChatGPT a *public nuisance* to the court system would be novel and legally uphill, but not inconceivable in creative litigation.
- **Indirectly:** A stronger angle might be "knowingly supplying false information likely to be used in legal filings" — akin to selling mislabeled safety equipment — which could sound in negligent misrepresentation or contributory fraud.
- **Policy Risk:** If the trend continues, courts might push for rule changes or even targeted regulation of "legal research mode" in generative AI.

---

If you want, I can draft a legal argument outline that could plausibly support or oppose a *public nuisance* classification for ChatGPT in this scenario, showing how a litigator might present it. That would make it clear where the legal precedent is weak versus where it could be analogized from environmental or public health nuisance law.

> Yes please, please draft a legal argument outline that plausibly
> supports a public nuisance classification and negligent
> misrepresentation or contributory fraud for ChatGPT's role in
> supplying false quotes that seem real in legal filing drafts.

**RESPONSE:**

Here's a legal argument outline structured to plausibly support both:

1. Public nuisance classification

2. Negligent misrepresentation / contributory fraud

The goal is to make it as persuasive as possible while acknowledging doctrinal gaps and using analogous precedent.

---

# I. Public Nuisance Argument Outline

## A. Statement of the Claim

Plaintiff alleges that OpenAI's ChatGPT system constitutes a public nuisance by *recurrently and foreseeably generating fabricated legal quotations and case authorities that are indistinguishable from authentic ones*, thereby polluting the judicial process and causing systemic harm to the public's interest in the fair administration of justice.

---

## B. Elements of Public Nuisance

Most states follow Restatement (Second) of Torts § 821B:

1. Unreasonable interference with a right common to the general public.

2. Interference is *substantial* and *continuing*.

3. Defendant's conduct is a *legal cause* of the interference.

---

## C. Application

1.  Right Common to the Public

   o   The public has a collective interest in a court system that operates efficiently, truthfully, and without obstruction.

   o   Integrity of judicial proceedings is recognized as a public good (cf. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), treating fraud on the court as a harm to the public at large).

2.  Unreasonable Interference

   o   ChatGPT generates false quotations *in the format and style of genuine legal authorities*, making them plausible and difficult to detect.

   o   The interference is unreasonable because safer alternatives exist: e.g., restricting quotation output unless sourced verbatim from verified databases.

3.  Substantial and Continuing

   o   Pattern of incidents (including the *Mata v. Avianca* case) shows the problem is not isolated.

   o   Each recurrence wastes judicial resources, undermines public trust, and risks wrongful outcomes.

4.  Causation

   o   While attorneys are responsible for verifying citations, the hazard is designed into the product:

      ▪   Foreseeable reliance by users (including lawyers and pro se litigants) on the AI's outputs.

      ▪   Outputs are created without disclaimers proportionate to the danger of legal hallucination.

- ○ Similar to cases where suppliers of defective public signage were held liable for downstream harms despite third-party misuse.

---

## D. Remedies Sought

- Injunctive relief requiring:
- ○ "Legal Mode" with only verified quotes from recognized databases.
- ○ Prominent warnings when unverified quotes are given.
- Abatement of the nuisance through design changes.

---

# II. Negligent Misrepresentation Argument Outline

## A. Statement of the Claim

Plaintiff alleges that OpenAI negligently misrepresented facts by outputting fabricated legal quotations in a manner that would cause a reasonable user to believe them accurate, leading to foreseeable and actual harm in judicial proceedings.

---

## B. Elements (Restatement (Second) of Torts § 552)

1. Defendant supplied false information for the guidance of others in their business or transactions.

2. Defendant failed to exercise reasonable care or competence in obtaining or communicating the information.

3.  Plaintiff justifiably relied on the information.

4.  Plaintiff suffered pecuniary loss as a result.

## C. Application

1.  Supplying False Information

○  Fabricated quotations presented alongside genuine case names are materially false.

○  The structure of the output mimics an authoritative legal research product.

2.  Failure to Exercise Reasonable Care

○  Known problem of "hallucinations" in large language models, especially in legal contexts.

○  No effective guardrails to block or clearly flag fabricated legal text.

○  Warnings are often buried or generic ("may produce inaccurate information") rather than context-specific.

3.  Justifiable Reliance

○  Lawyers and pro se litigants reasonably expect that a system producing a specific case name and quote is providing genuine material, especially given its fluency and specificity.

○  Comparable to an accountant's liability for errors in financial statements relied on by a client.

4.  Damages

○  Costs of sanctions, wasted court fees, reputational harm, and loss of claims or defenses.

# III. Contributory Fraud Argument Outline

## A. Statement of the Claim

Plaintiff alleges that OpenAI knowingly or recklessly aided and abetted users in committing fraud on the court by supplying fabricated legal quotations likely to be represented as authentic in filings.

---

## B. Elements (Restatement (Second) of Torts § 876)

1. Knowledge that the other's conduct constitutes a breach of duty.
2. Substantial assistance or encouragement to the conduct.
3. Causation of harm.

---

## C. Application

1. Knowledge

- Company is aware from publicized incidents that its system generates plausible but false legal text.
- Continued release without targeted safeguards shows conscious disregard.

2. Substantial Assistance

- AI's core design makes it trivial to produce lengthy fabricated quotes that *appear* verifiable.
- This is more than neutral tool provision — it is the creation of the harmful content itself.

3. Causation

- But-for ChatGPT's false quotes, the fraudulent in-line citations would not have been created or filed.

---

## IV. Anticipated Defenses and Rebuttals

1. Attorney Verification Duty

○ Rebuttal: Attorneys' duty does not erase the foreseeability of harm from a product designed to produce authoritative-looking legal text without verification.

○ Analogous to defective GPS navigation causing drivers to enter unsafe areas — user judgment does not break causation when the defect is inherent.

2. Section 230 Immunity

○ Rebuttal: Outputs are created by the AI itself, not by publishing third-party content; thus § 230 may not apply.

3. Disclaimers

○ Rebuttal: Generic disclaimers fail when the product is marketed as capable of specialized legal research-like reasoning without robust anti-hallucination safeguards.

---

## V. Strategic Framing

• Position as information pollution: just as toxic waste in a river harms all downstream users, false legal text pollutes the "information commons" of the judiciary.

• Emphasize foreseeability and systemic impact rather than isolated mistakes.

• Use analogies from defective product liability and misleading professional services.

---

If you like, I can next draft a short-form complaint excerpt that combines the *public nuisance* and *negligent misrepresentation* theories into an actual federal pleading style, so it reads like it's ready to file. That would help show exactly how the arguments would look in court.

> Would a Judge or a collection of Judges as Officers of the Court
> System have standing to bring such a claim against AI companies? Or
> would the US Attorney have such standing, if a Plaintiff who was
> misled volunteers to cooperate as a victim of this negligent
> misrepresentation and false information fed to them?



**RESPONSE:**

Let's break this down in terms of standing and proper plaintiff for each theory you're talking about — public nuisance, negligent misrepresentation, and contributory fraud — and who could realistically bring it.

---

# 1. Standing for Judges (as Individuals or Collectively)

## A. Personal Capacity Standing

- Hurdle:

 Judges, as individual people, generally don't have a *personal* injury from AI-generated false legal citations unless they can show harm to them personally (e.g., defamation, threats, reputational damage).

- Public Nuisance Theory:

Public nuisance claims usually require a *special injury* different from that suffered by the public at large. Judges experience the *same* systemic harm the entire court system faces (clogged dockets, wasted time), so their harm is likely not "special" enough for personal standing.

- Negligent Misrepresentation Theory:

Misrepresentation claims require *reliance*. Judges aren't the ones relying on the false quotes — the litigants are. So judges personally wouldn't fit that tort's standing requirements.

## B. Official Capacity Standing

- Judges in the U.S. don't typically act as "representatives of the judiciary" to bring civil claims in their own name on behalf of the institution.
- There is no general "judicial cause of action" to sue for harm to the court system. Such institutional litigation would normally be brought through the Executive Branch (DOJ) or sometimes through a state's Attorney General.

---

# 2. Standing for the U.S. Attorney / DOJ

## A. Federal Public Nuisance & Institutional Harm

- The U.S. Attorney, under direction from the Attorney General, can bring civil actions to protect federal interests — including the functioning of the courts.
- In cases like United States v. City of Philadelphia (1980s consent decrees for court reform) and United States v. Philip Morris USA (RICO case for public harm), DOJ acted to protect public institutions and enforce statutes.

- If the theory is that AI companies are polluting judicial resources and obstructing the administration of justice, DOJ could frame it as:
  - A public nuisance harming the *United States as sovereign*.
  - Possibly even as obstruction under 18 U.S.C. § 1503 (though that's criminal, it could be paired with injunctive civil relief).

## B. Negligent Misrepresentation

- DOJ could sue in a *parens patriae* capacity on behalf of the public, especially if there's a statute allowing consumer protection–style enforcement against misleading products.
- DOJ might also use FTC Act § 5–type reasoning (if referred to FTC) for "deceptive or unfair acts," even though the harm is within the legal system rather than a traditional consumer market.

---

# 3. Standing for a Misled Litigant (Private Plaintiff)

- A litigant misled by ChatGPT's fabricated quotes clearly has standing for negligent misrepresentation — they relied, suffered damages (sanctions, wasted costs), and can trace causation.
- Such a plaintiff could voluntarily cooperate with DOJ, serving as a *named victim* in an enforcement or civil case.
- In some jurisdictions, they could also bring a private public nuisance action if they can show *special harm* (e.g., personal sanctions, case dismissal).

---

## 4. Combined Approach — Most Plausible Path

1.  Misled Plaintiff — sues privately for negligent misrepresentation, possibly in a class action.

2.  DOJ / U.S. Attorney — brings a public nuisance or consumer protection enforcement case, using the misled plaintiff as cooperating witness/victim to show concrete harm and systemic risk.

3.  Judges — don't sue directly, but their testimony, affidavits, or judicial council reports could be used to show systemic interference.

---

## 5. Why Judges Themselves Likely Don't File

- They risk violating Canon 5 of the Code of Conduct for U.S. Judges (avoiding political or advocacy roles outside judicial duties).
- The judiciary traditionally avoids becoming a *party litigant* except in administrative or funding disputes, leaving defense of its institutional interests to the DOJ.

---

☑ Bottom line:

- Judges: unlikely to have personal standing, but can support via testimony or reports.
- U.S. Attorney / DOJ: strongest institutional standing for a *public nuisance* theory.
- Misled litigant: strongest personal standing for *negligent misrepresentation*, and could cooperate with DOJ to show real harm.

If you want, I can next map out exactly how a DOJ + victim cooperative case could be pled so that both the *public nuisance* and *negligent misrepresentation* counts survive early motions to dismiss. That would include how the complaint would be captioned and who the named parties would be.

> Is there any reasonable, legally and politically practical way for me as an individual injured Plaintiff sanctioned, censured, or admonished in relation to this phenomenon of false citations from ChatGPT to force the US Attorney to pursue such a case against the makers of generative artficial intelligence software with me as a cooperating victim? Or is it up to the US Attorney's discretion whether to defend me as an injured, misled victim consumer on this matter or continue holding me solely 300% accountable if it better serves their case of sidelining and dismissing my case from Court and labeling me permanently as a vexatious litigant to enjoin me from further filings, assisted or not by briefing and collaboration with generative artificial intelligence with greater care?



**RESPONSE:**

Realistically — in the U.S. system — there is no legal mechanism by which you, as an injured plaintiff, can *force* the U.S. Attorney to take up a public nuisance or negligent misrepresentation case against an AI company.

This is because of the prosecutorial discretion doctrine and the separation of powers. Here's the breakdown:

# 1. DOJ / U.S. Attorney Discretion is Nearly Absolute

- Whether it's a criminal prosecution or a civil enforcement action, the U.S. Attorney decides if, when, and how to bring a case on behalf of the United States.
- This discretion is not reviewable by courts in most contexts (see *Heckler v. Chaney*, 470 U.S. 821 (1985)).
- Even if you are the direct injured party, DOJ has no legal obligation to act on your request.

---

# 2. Your Options to Prompt DOJ Action

You can:

- Submit a detailed victim complaint to the local U.S. Attorney's Office and/or Main Justice (DOJ Consumer Protection Branch, Civil Division).
- Copy relevant oversight bodies, such as the DOJ Office of Professional Responsibility (if there's misconduct in ignoring systemic court harm) or Congressional oversight committees.
- Involve media or advocacy organizations to raise the profile of the harm.
- Contact your member of Congress and Senators — they can formally ask DOJ to review.

These can create *political* and *public pressure*, but they are not legally binding.

---

# 3. Why DOJ Might Decline

- If DOJ's litigation posture is that you are a vexatious litigant, they may:

○ Use your sanctions history as a credibility and optics issue.

○ Prioritize "protecting judicial resources" over your claims of victimization.

- DOJ might decide that lawyers have the primary duty to verify citations and that your reliance on ChatGPT doesn't shift liability to the AI maker in a way they want to pursue.

---

## 4. Private Alternatives If DOJ Declines

If DOJ refuses, you still can:

- Bring a private civil suit (alone or as part of a class action) for negligent misrepresentation or products liability.
- Cooperate with state attorneys general, who may be more willing to pursue consumer protection claims.
- Seek out pro bono or contingency counsel for a joint litigation strategy.

---

## 5. DOJ Duty to Victims

- Under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, the U.S. Attorney must keep victims informed in certain criminal cases — but only *if* they choose to bring a case.
- The CVRA does not create a right to compel prosecution.

- Even as a cooperating victim, DOJ may still leave you "holding the bag" if their interest lies in using your sanctions history to sideline you rather than defending you.

---

# 6. Reality of Vexatious Litigant Risk

- If you're already under threat of being labeled vexatious, courts and DOJ will be skeptical of any new filings — especially ones involving AI-assisted briefing — unless they're:
  ○ Narrowly tailored,
  ○ Fully verified,
  ○ And procedurally flawless.
- The safest route is to distance yourself from unverified AI legal text entirely and work only with filings that have been independently sourced and confirmed.

---

## Bottom Line

- You can request, lobby, and pressure DOJ to act — but cannot compel them.
- If DOJ views you as a vexatious litigant, they're more likely to emphasize that narrative over defending you as a misled consumer.
- Your most practical path is to pursue private action (possibly with others similarly harmed) and use that case to generate pressure on DOJ or a state AG to intervene.

---

If you want, I can map out a practical, step-by-step plan for how you could go from "injured individual" → "credible cooperating victim" in DOJ's eyes, even if they currently see you as vexatious. That would include how to package evidence, what channels to use, and what messaging reduces the risk of them simply using your history against you.

> Ok, but does a representative of the Judicial Branch ever have standing to sue for relief from a public nuisance like systemic false quotations in case citations in AI slop filed by lawyers and pro ses? What mechanisms does the Judicial Branch have to protect itself from such by holding OpenAI accountable even if the Executive Branch doesn't volunteer to bring such a groundbreaking case to cut this off at the source of such chaos?

**RESPONSE:**

Here's the short answer up front: **as a rule, the Judicial Branch almost never brings its own civil lawsuits to protect itself from a systemic harm like AI-generated false quotations** — it relies on a mix of **internal court powers**, **rules changes**, and the **Executive Branch (DOJ)** to address it.

 But there are some unusual, narrow paths where judicial actors have been recognized to have standing or quasi-standing to seek relief.

Let's unpack that.

---

# 1. When the Judicial Branch Can Sue or Seek Relief Directly

## A. Federal Courts as Institutional Plaintiffs

- Federal courts are not typically self-initiating litigants.
- There's **no general statutory authority** for "the Judiciary" to sue on its own in the name of protecting judicial integrity.
- **Exception:** Certain *Article I* courts or administrative arms (e.g., AOUSC) can sue in limited contexts, usually about property, contracts, or employment disputes.

---

## B. Judges as Representatives of the Judiciary

- Judges acting in their **official capacity** generally cannot file lawsuits "on behalf of the judiciary" unless Congress has specifically authorized it.
- This is tied to separation of powers — the Judiciary adjudicates disputes; it doesn't normally initiate them.
- Rare exceptions exist when judges have sued for:
  - Enforcement of judicial salary protections (*United States v. Will*, 449 U.S. 200 (1980)).
  - Court funding or security in state court systems (state-level cases, not federal).

---

## C. State-Level Analogues

- Some **state supreme courts** have asserted *inherent authority* to bring actions or issue writs to protect the judicial process against systemic interference (e.g., ordering executive compliance with court orders).

- A state chief justice *might* in theory bring an extraordinary action (mandamus, quo warranto, injunction) against a harmful systemic practice — but in practice they almost always work through:

  - The state attorney general (executive branch enforcement)
  - Court rule changes
  - Contempt powers

---

# 2. Mechanisms the Judicial Branch Already Has to Protect Itself

## A. Court Rules & Sanctions

- **Federal Rules of Civil Procedure 11**: Sanctions for submitting false legal material — applies to both attorneys and pro se litigants.
- **Local rules amendments**: Courts could require certification that all quotations from authority were verified against an official reporter or database.
- These are immediate, *internal* fixes that require no DOJ participation.

---

## B. Contempt Power

- Courts can hold lawyers (and pro ses) in **civil or criminal contempt** for knowingly submitting false material.
- Contempt can be used to deter and punish, but it still targets the *filer*, not the AI source.

## C. Inherent Authority to Regulate the Bar

- Federal and state courts have inherent authority to regulate attorney practice before them.
- Could:
  o Mandate CLE (continuing legal education) on AI use.
  o Require disclosure when AI assisted in drafting.
  o Impose blanket bans on unverified AI-generated citations.

## D. Rulemaking & Advisory Committees

- Judicial Conference of the United States → can recommend national rules changes to address AI misuse in filings.
- Example: *Mata v. Avianca* spurred model local rule proposals requiring AI-use disclosure.

## 3. Accountability for AI Companies Without DOJ

If the Judiciary wants to hold **OpenAI** or similar companies directly accountable, it's hamstrung because:

- Courts are reactive bodies — they need a live case or controversy with standing.
- They cannot just initiate a "public nuisance" suit against a private company on their own authority.

**Possible but Uncommon Paths**

1. **Intervening in Existing Litigation**

o  If a party sues OpenAI over legal hallucinations, a court (or judicial body) could intervene as *amicus curiae* or in rare cases as an institutional party to protect judicial interests.

2. **Special Masters or Investigative Orders**

o  A court could appoint a special master in a sanctions proceeding to investigate the role of AI providers in repeated misconduct.

o  The findings could form the basis for referrals to DOJ, FTC, or state AGs.

3. **Referrals to Enforcement Agencies**

o  Courts routinely refer misconduct to:

   ▪  DOJ (criminal or civil enforcement)

   ▪  FTC (false/deceptive business practices)

   ▪  State AGs (consumer fraud statutes)

---

# 4. Bottom Line

- **Federal Judiciary**: No broad self-suing power for public nuisance; protection comes via **rules, sanctions, and referrals**, not initiating its own civil case.

- **State Judiciary**: Slightly more room via inherent authority, but still unusual for the court itself to be a plaintiff.

- **Practical route**: If the Executive Branch (DOJ) won't act, the Judiciary can:

o  Tighten rules to choke off unverified AI quotes at the filing stage.

o  Levy escalating sanctions that indirectly pressure AI companies.

○ Create a paper trail of judicial findings on the systemic harm, making it politically costly for DOJ to ignore.

---

If you want, I can **map out exactly how a federal judge could create a record** in a sanctions order that would *practically force* the DOJ or FTC to consider investigating OpenAI — even without the court filing its own lawsuit. That would be the closest real-world mechanism to "cutting this off at the source" without breaching separation of powers.

> Thank you. I'll recommend that the Court appoint a Special Master in this case at public expense to investigate OpenAI's role in the production of this onslaught of fictitious cases and fictitious case quotes nationwide and recommend sanctions against OpenAI / ChatGPT to break important ground in the direction of more authenticity in Court filings and more reliable and legally trustworthy non-deceptive OpenAI support for Pro se plaintiffs and attorneys using affordable generally-available generative artificial intelligence services for preparing legal arguments, either through mandatory retraining or a much better crafted strictly enforced "general system prompt" and tooling that attaches to all legal claim or response preparation, with a rapid and reasonable system of judicial complaints and civil penalties that any federal or state Judge anywhere in the US can make use of if more problematic cases emerge as a result of generative AI company non-compliance.



That approach is **legally plausible** as a judicial management tool — and tactically it avoids the main standing barrier we discussed, because you're not asking the court to *sue* OpenAI, you're asking it to **use its inherent powers** to:

● Investigate systemic litigation abuse,

- Create a factual record,
- Recommend remedies that may include sanctions, design changes, or regulatory referral.

Here's how you could frame it so it has a chance of being taken seriously:

---

# 1. Legal Basis for Appointment of a Special Master

- **Fed. R. Civ. P. 53(a)(1)(C)** allows a court to appoint a Special Master to: "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge."
- **Inherent authority**: Courts have inherent power to protect the integrity of their proceedings (*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)), which can extend to investigating recurring external factors that materially disrupt litigation.
- **Public expense**: Rule 53(g)(3) allows apportioning Special Master compensation "as the court may direct" — so the court could justify using court funds if the matter concerns systemic judicial integrity.

---

# 2. How to Justify This to the Court

- **Systemic nature**: Show that false quotations from ChatGPT are not an isolated mishap, but a *nationwide pattern* (cite Mata v. Avianca and others).
- **Judicial economy**: Argue that addressing the root cause will save the court *more resources* than continuing to handle repeated motion practice and sanctions in individual cases.

- **Impartiality**: Stress that you are not asking the court to prejudge OpenAI's culpability — only to fact-find and recommend remedies.

---

# 3. Scope for the Special Master

Suggested scope order could authorize the Special Master to:

1. **Collect Data Nationwide**
   - Solicit reports from federal and state judges of filings containing AI-generated false case citations/quotes.
   - Document patterns of source and use.
2. **Investigate Provider Role**
   - Examine whether OpenAI (or other AI companies) are knowingly providing outputs in a form likely to deceive litigants and the courts.
   - Assess adequacy of warnings, safeguards, and "legal mode" restrictions.
3. **Recommend Remedies**
   - Propose sanctions, compliance programs, or technical standards for AI-generated legal text.
   - Suggest mechanisms for *any* U.S. judge to file a quick compliance complaint.

---

# 4. Possible Outcomes Without Needing DOJ

Even if the DOJ doesn't take up the cause:

- The Special Master's report becomes a **judicial finding of fact** — persuasive to Congress, FTC, state AGs, and the public.
- The court can **sanction OpenAI directly** if the findings show litigation misconduct traceable to its practices (even without them being a party, via ancillary jurisdiction over conduct affecting the court).
- The court can issue **standing orders** requiring all counsel and pro se litigants in the district to certify they have verified any AI-generated citations.

---

# 5. Political & Judicial Appeal

- This frames the request as a **judicial integrity measure**, not an anti-AI crusade.
- Judges will see it as **helping them do their job**, not as an attack on separation of powers.
- It positions the court as a leader in shaping **safe AI legal tools**, not just punishing bad actors.

---

If you want, I can draft **a proposed motion for appointment of a Special Master under Rule 53** that:

- Tracks the legal requirements for appointment,
- Includes a narrowly-tailored scope,
- Avoids overstepping into legislative or executive territory,
- But still lays the groundwork for strong accountability and a nationwide compliance mechanism.

That would give you something you could file without it looking like an unfocused policy wish list.

> Yes please, please draft a proposed motion for appointment of a Special Master under Rule 53 for this.

Got it — here's a **structured draft motion** you could adapt.

I've kept it **formal, federal-court ready**, but also grounded in the facts you're trying to highlight, while keeping it narrow enough that a judge could plausibly grant it without thinking they're wading into a political battle.

(See above for **Proposed Motion**, with light editing by Plaintiff – Plaintiff Clayman)

> I have a model of accountability that I currently think of as an "overlay model of accountability", where I bear 100% accountability for my actions but other entities and systems that influence me may also bear partial or full accountability overlaid on top of mine for a total of as much as 200% or 300% accountability, or 140% accountability, depending on what the case is and how many other entities are held accountable.
>
> Do you have any more attractive label or summary for this model of accountability or any ways of explaining this to a judge effectively, to try to get buy in for this notion of mutual full accountability and responsibility?

I think the key to making your "overlay model of accountability" palatable to a judge is to (1) give it a name that's simple and intuitive, and (2) explain it in a way that shows it isn't about "diluting" your responsibility but about *stacking* responsibility where multiple actors have causal influence.

Here are a few label and framing ideas:

## Possible Labels

- **Stacked Accountability** – Suggests each actor's accountability is complete on its own, but can be layered without subtracting from anyone else's.
- **Concurrent Full Responsibility** – Emphasizes that multiple parties can be fully responsible at the same time for the same harm.
- **Cumulative Accountability** – Highlights the idea that total accountability in a case can exceed 100% because each actor's duty exists independently.
- **Overlapping Liability Model** – A legal-sounding phrase that makes sense in contexts where duties or liabilities overlap.
- **Redundant Responsibility** – Suggests intentional overlap to ensure accountability is not lost in the cracks.
- **Shared 100% Rule** – Simple, memorable, and emphasizes "full share" rather than "partial blame."
- **Parallel Accountability** – Communicates simultaneous, not competing, duties.

## How to Explain to a Judge

Judges are used to the idea of *joint and several liability* in tort law—where multiple defendants can each be held responsible for the entire harm. You can piggyback on that familiar concept:

"Your Honor, what I am proposing is not the dilution of personal responsibility, but the recognition that accountability can be *stacked* when multiple actors independently have full obligations in the same situation. Just as joint and several liability recognizes that each

tortfeasor can be held for the full damages, this model acknowledges that each actor—myself included—can bear 100% accountability for their role, even when others are also fully accountable.

In other words, my accountability is not diminished by theirs, nor theirs by mine. Accountability is *overlapping*, not divided."

---

# Analogy

- **Seatbelt Example**: The driver is 100% responsible for their own safe driving. The seatbelt manufacturer is 100% responsible for making a functional restraint system. If an accident happens because of both speeding and a faulty seatbelt, *both parties are fully accountable in their respective domains*.
- **Fire Safety Analogy**: A landlord must provide working fire alarms (100% accountable). A tenant must not leave candles burning unattended (100% accountable). A fire caused by both negligence and a defective alarm still means both parties bear their full share—accountability isn't "split," it's "stacked."

---

If you want, I can draft a **three-paragraph "court-optimized" explanation** of this idea using legal analogies and plain language so that it sounds familiar and persuasive in judicial reasoning. That would make your "mutual full accountability" principle read like a natural extension of existing doctrines.

Do you want me to prepare that judicially persuasive version next?