David Morris Clayman / אדם דוד קליימן / דוד משה קליימן, *Pro se*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED BY ___CAS___ D.C.

NOV 17 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

| | |
|---|---|
| **David Morris Clayman** ( / אדם דוד <br> דוד משה קליימן), <br> Plaintiff, <br><br> vs. <br><br> **UNITED STATES OF AMERICA** <br> et. al. | CASE NO. 9:25-CV-80890-WM <br><br> PLAINTIFF'S REPLY TO OPPOSITION ON 59(E) RECONSIDERATION ON RETURN OF SACRED NAMES <br><br> ☑ ~~Completed Full Prefiling Checklist Before Printing~~ |

# PLAINTIFF'S REPLY TO OPPOSITION ON 59(E) RECONSIDERATION ON RETURN OF SACRED NAMES OF G-D

## I. ACKNOWLEDGMENT OF CITATION ERROR AND SINCERE APOLOGY

Plaintiff must begin this Reply with a forthright acknowledgment and sincere apology to the Court and Defendants. In his Rule 59(e) Motion [DE 62], Plaintiff cited "United States v. Bovio, 708 F. Supp. 2d 579 (E.D.N.Y. 2010)" for the proposition that courts routinely return religious items to their owners. Despite Plaintiff's belief that he verified this citation, he cannot locate this case in any legal database, and it appears this citation may be a product of AI-assisted drafting error—a so-called "hallucination."

Plaintiff accepts full responsibility for this error. As a pro se litigant using AI tools to assist with legal research and drafting, Plaintiff bears the ultimate obligation to verify every citation before filing. He failed in that duty here, and he is deeply sorry for wasting the Court's time and opposing counsel's resources. This error was not intentional, and Plaintiff would never knowingly cite fictitious authority.

Plaintiff feels obliged to remind this Court that the last time this happened he tried to share with the Court a strategy for erecting guardrails at the systems engineering level and preventing this kind of terrible error from happening at the source. It came to my attention that when I

submitted my Motion for a Special Master, a large part of the argument in the appendix was cut off and unsubmitted because the Plaintiff didn't notice that his printer had run out of paper and not printed the end of that document; which, the Plaintiff feels obliged to point out, is another example of the issues and strange mishaps that arise when pro ses aren't allowed to electronically file. The Plaintiff is including a full copy of that partial appendix to this filing so that, if the Court wishes, it can consider that approach and strategy for asking OpenAI to become more disciplined with its support for pro se filers' legal drafting experiences. Claude AI has been doing quite well in Plaintiff's experience... though Claude also currently hallucinates, it seems to have more guardrails and at least is giving me checklists of case citations it has used in its drafting process I should finish cross-checking (as checklist items) before submitting to Court.

However, setting aside the best way to fix this problem systematically and individually via stacked seat-belted responsibility, Plaintiff respectfully submits that this citation error, while regrettable, does not undermine the core legal arguments of his Motion. The Bovio citation was offered as illustrative support for a broader principle—it was not the foundation of Plaintiff's RFRA or First Amendment claims. The substantive merits of Plaintiff's request for neutral accommodation remain intact and deserve consideration on their own terms.

## II. THIS IS LIKELY A CASE OF FIRST IMPRESSION

Defendants' Opposition highlights the absence of direct precedent, but this absence actually strengthens rather than weakens Plaintiff's position. The return of court filings containing sacred Names of G-d for religiously appropriate disposition may well be a federal case of first impression.

### A. Pro Se Litigants Lack Access to Comprehensive Legal Research Tools

Plaintiff acknowledges that somewhere in the vast corpus of American jurisprudence, there may exist precedent directly on point. However, finding such a "needle in a haystack" would require access to comprehensive legal research databases that are financially prohibitive for pro se litigants:

**Westlaw**: Starting at $132.80/month for single-state access, or $266.40/month for all states and federal materials, with required annual contracts. More comprehensive Westlaw Edge or Precision plans with AI-enhanced features cost significantly more.

Plaintiff's Reply RE Opposition on 59(E) Reconsideration of Return of Sacred Names

**LexisNexis**: Minimum plans start at approximately $148.84/month plus a $25/month administrative fee, totaling $173.84/month for one attorney, with annual contracts required. Enhanced plans with broader coverage cost $271/month or more.

These costs translate to $1,600 to $3,200 or more annually—funds that most pro se litigants, who are often self-represented precisely because they cannot afford legal counsel, simply do not have. Expecting a pro se plaintiff to locate obscure precedent about the return of sacred Jewish texts from federal court custody is unreasonable when such research requires tools costing thousands of dollars per year.

### B. The Absence of Precedent Does Not Foreclose Relief

Federal courts regularly decide cases of first impression. The Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq., is self-executing legislation that does not require analogous case law for its application. RFRA's text commands that the "Government shall not substantially burden a person's exercise of religion" unless the burden furthers a compelling governmental interest through the least restrictive means. 42 U.S.C. § 2000bb-1(a)-(b).

This Court has both the authority and the duty to apply RFRA to novel factual circumstances. Indeed, the statute was designed precisely to protect sincere religious exercise that may not fit neatly into pre-existing categories. If Plaintiff's request were commonplace, there would be established precedent. The very novelty of the request—seeking return of documents containing the Divine Name for proper disposition under Jewish law—demonstrates why RFRA's flexible, case-by-case analysis is appropriate here.

## III. DEFENDANTS MISCHARACTERIZE THE NATURE OF THIS MOTION

Defendants contend that Plaintiff "does nothing more than attempt to relitigate the issues raised in the original motion." This characterization misses the mark. Plaintiff's Rule 59(e) Motion falls squarely within the recognized grounds for reconsideration: correcting a manifest error of law.

The Court's original Order [DE 49] denied relief on the ground that granting Plaintiff's request would "infringe the Establishment Clause as it would result in the Court 'officially preferring' one religious denomination over another." This reasoning conflates religious

accommodation with religious endorsement—a distinction the Supreme Court has repeatedly emphasized.

In Cutter v. Wilkinson, 544 U.S. 709, 720 (2005), the Supreme Court held unambiguously that "This Court has long recognized that the government may … accommodate religious practices … without violating the Establishment Clause.." quoting Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U. S. 136, 144–145 (1987). The Court explained that "there is room for play in the joints" between the Free Exercise Clause and the Establishment Clause, and that the government may—indeed, under RFRA, must—accommodate religious practice without thereby establishing religion.

Plaintiff is not asking this Court to affirm his theological beliefs, declare that Jewish law requires particular treatment of the Divine Name, or prefer Judaism over other faiths. He asks only that the Court permit him to retrieve his own filings containing the sacred Names for proper disposition—a neutral administrative act that mirrors the routine return of religious artifacts introduced as evidence. If a court returned a Bible, crucifix, prayer rug, or rosary beads to their owner after trial, no one would claim the court had "established" Christianity or Islam. The same principle applies here.

Correcting this legal error is precisely what Rule 59(e) exists to accomplish. See Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007), which quotes "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact" from In re Kellogg, 197 F.3d 1116, 1119 (11th Cir.1999).

## IV. THE RELIEF REQUESTED REMAINS NARROWLY TAILORED AND NEUTRAL

Plaintiff reiterates that his requested relief imposes minimal burden on the Court and Defendants:

1. **Return of Court-Held Filings**: Upon final disposition, the Clerk shall notify Plaintiff and permit retrieval or mailing (at Plaintiff's expense) of original paper filings containing the written Names of G-d.

2. **Notice Regarding Defendants' Copies**: Defendants notify Plaintiff of any remaining physical copies and either return them or certify respectful disposition.

3. **Non-Endorsement**: Nothing herein requires any party to affirm Plaintiff's beliefs; the acts are purely administrative.

Plaintiff's Reply RE Opposition on 59(E) Reconsideration of Return of Sacred Names

This accommodation is far less burdensome than many religious accommodations courts routinely grant. It requires no ongoing monitoring, no special facilities, no exemption from generally applicable laws. It simply permits Plaintiff to take custody of his own documents for religiously appropriate handling—an accommodation that costs the government almost nothing aside from the minimal cost of postage and requires no theological judgment. The labor the government is losing invested in fighting and resisting some accommodation on this request is by far and away the highest cost factor involved in this request.

## V. CONCLUSION

Plaintiff sincerely apologizes for the citation error in his original Motion. However, that error does not defeat his underlying claim. The absence of direct precedent reflects the novel nature of his request, not its lack of merit. RFRA's text provides the legal framework for analysis, and this Court is fully empowered to grant narrowly tailored, neutral relief that accommodates Plaintiff's sincere religious exercise without endorsing or establishing religion.

Plaintiff respectfully requests that this Court grant his Rule 59(e) Motion and permit the return or certified respectful handling of documents containing the sacred Names of G-d.

Respectfully submitted this 14th day of November, 2025.

s/Plaintiff David Clayman, Still *Pro se*
7930 Palacio Del Mar Drive
Boca Raton, FL 33433-4148
+1 (321) 252 - 9626
david@ingwetrust.org
david@inhashemwetrust.org
david@neighbor911.us
david@safeword.app
david@civigion.us
david@lifesaverlabs.us
david@clayman.org

### CERTIFICATE OF SERVICE – ELECTRONIC AND PAPER SERVICE

I HEREBY CERTIFY that on this 14th day of November, 2025, I served a copy of this motion

Plaintiff's Reply RE Opposition on 59(E) Reconsideration of Return of Sacred Names

electronically upon opposing counsel of record and, as required by the rules governing pro se litigants in the Southern District of Florida, subsequently printed and mailed a copy of this filing to the Court by certified mail.

I am still preserving my objection to the lack of electronic filing access by pro se filers. I will need to spend time now printing at a UPS copy center and driving afterward to the post office instead of working on the Lifesaver Labs projects Neighbor 911™ and Safeword™ or topically working further on aspects of religious freedom, like bettering www.civigion.us.

/s/ David M. Clayman
Pro Se Plaintiff

Plaintiff's Reply RE Opposition on 59(E) Reconsideration of Return of Sacred Names

DAVID CLAYMAN
(321) 252-9626
7930 PALACIO DEL AMR DR
BOCA RATON  FL 33433

1 LBS            1 OF 1
SHP WT: 1 LBS
DATE: 14 NOV 2025

SHIP  CLERK OF COURTS
TO:   RM 202
      701 CLEMATIS ST

WEST PALM BEACH  FL 33401-5113

FL 334 0-05

UPS GROUND

TRACKING #: 1Z 361 E83 03 4226 0171

BILLING: P/P

REF #1: SP

MMG6X5F8F8GXE ISH 13.00C ZZP 450 42.5U 10/2025



SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.
KR0725