UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-80890-MATTHEWMAN

DAVID MORRIS CLAYMAN,

      Plaintiff,

v.

SCOTT BESSANT[1], in his Official Capacity as Secretary
of the Treasury, et al.,

      Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT [DE 27] AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT [DE 35]

THIS CAUSE is before the Court upon Defendants, United States of America, Scott Bessent, Congress of the United States, Jerome H. Powell, and Gene L. Dodaro's ("Defendants") Motion to Dismiss Amended Complaint ("Motion to Dismiss") [DE 27] and Plaintiff David Morris Clayman's ("Plaintiff") Motion for Leave to File Second Amended Complaint ("Motion to Amend") [DE 35]. Both motions are now fully ripe for review. *See* DEs 36, 41, 47, 53, 65, 66. The Court has carefully considered the relevant filings and is otherwise fully advised in the premises.

**I. Background**

Plaintiff brought this lawsuit primarily in order to have the phrase "In God We Trust" removed from U.S. coins and currency and to create access to "self-pay cashless bail nationwide."

---

[1] The Court notes that Scott Bessent's name is spelled incorrectly on the docket.

On July 15, 2025, Plaintiff filed his Initial Complaint [DE 1]. After Defendants filed a motion to dismiss [DE 13], Plaintiff filed his First Amended Complaint [DE 19]. The 108-page First Amended Complaint ("FAC") alleges violations of the Religious Freedom Restoration Act (Count I), the Free Exercise Clause (Count II), the Establishment Clause (Count III), and the Takings Clause (Count IV). *Id.* The FAC further alleges the "Right to Petition Government for Redress and Trust That They'll Actually Respond with Religious Protections" (Count V), "Reasonable Pro Se Fee Request" (Count VI), and "Penny Minting Ban and Currency Overhaul Under RFRA" (Count VII). *Id.*

Defendants filed their Motion to Dismiss [DE 27] on August 15, 2025. Then, on September 2, 2025, Plaintiff filed his Motion to Amend [DE 35]. One day later, he also filed a Response to the Motion to Dismiss. [DE 36]. In the Motion to Amend, Plaintiff seeks to add Donald J. Trump, in his official capacity as President and Commander-in-Chief, as a defendant, to expand certain counts, and to add new counts.

## II. **Motion to Dismiss**

a. Motion [DE 27]

Defendants argue that including the phrase "In God We Trust" on U.S. coins and currency does not place a substantial burden on Plaintiff's religious practices, does not violate the Religious Freedom Restoration Act ("RFRA"), does not violate the First Amendment's Free Exercise Clause or Establishment Clause, and does not violate the Fifth Amendment's Takings Clause. Defendants further argue that dismissal with prejudice is warranted under the facts of this case.

b. Response [DE 36]

In response, Plaintiff distinguishes the case law cited by Defendants and claims the FAC sufficiently pleads the required elements of each count. He also opposes Defendants' request for

dismissal with prejudice. Plaintiff further asserts that his proposed Second Amended Complaint responds to many of Defendants' arguments in their Motion to Dismiss and corrects deficiencies which exist in the First Amended Complaint.

    c. <u>Reply [DE 53]</u>

In reply, Defendants again assert that the relevant case law provides that the phrase "In God We Trust" on currency does not substantially burden a plaintiff's religious beliefs. Defendants also distinguish the cases relied on by Plaintiff in his Response. They further argue that the First Amended Complaint should be dismissed on res judicata grounds as Plaintiff has already brought a similar case in the Sixth Circuit, which resulted in a final judgment on the merits. As to the remaining counts, Defendants contend that they are insufficiently pled.

    d. <u>Sur-Reply [DE 65]</u>

Plaintiff claims that res judicata does not apply here for various reasons and makes several additional arguments in response to Defendants' Reply.

**III. <u>Legal Standards and Analysis as to the Motion to Dismiss</u>**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Pleadings, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* at 680-681 (citations omitted). The Court must review the "well-pleaded factual allegations" and, assuming their veracity, "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. A plaintiff must, under *Twombly*'s construction of Rule 8, cross the line "'from conceivable to plausible.'" *Id.* at 680 (citation omitted). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.

    a. <u>Count I</u>

Count I of the FAC alleges a violation of the RFRA against all Defendants. In the FAC, Plaintiff alleges that he was incarcerated for 28 days due to his inability to pay cash-only bail; that he continues to be vulnerable to pretrial detention due to the unavailability of cashless bail; that he is excluded from certain employment because he cannot handle cash; that he faces surcharges for not using cash; that he has difficulty with road trips in that he has to avoid cash-only tolls; that he cannot hold cash in contemplation of electronic systems failing due to natural disasters; that his future children's lives will be disrupted because they cannot handle cash; that he has difficulty tipping and donating to the needy; that he cannot walk into public bathrooms with cash on his person; that he cannot park in cash-only lots; that he is unable to accept small-dollar political

4

contributions; that he cannot operate a retail business; that he was unable to use $2,000 in cash he received as wedding gifts; that he suffers from a loss of privacy; and that he is excluded from cash-only services such as laundromats, bars, social events, and street food. [Am. Compl. at 11–21]. Plaintiff alleges that these situations collectively amount to a substantial burden. *Id.* at 21.

Congress enacted the RFRA "in order to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014). The RFRA explicitly prohibits the "government" from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability," unless the "government" can "demonstrate [] that application of the burden to the person–(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(a)–(b).

Courts have uniformly held that printing "In God We Trust" on currency and coins does not substantially burden an individual's religious beliefs. *See Newdow v. Peterson,* 753 F.3d 105, 109–10 (2d Cir. 2014) ("[W]e find that appellants' system of beliefs is not substantially burdened by the placement of the motto on currency and, therefore, affirm the district court's judgment on appellants' Free Exercise and RFRA claims."); *New Doe Child No. 1 v. Congress of the U.S.*, 891 F.3d 578, 591 (6th Cir. 2018)[2] (finding that the Government's inscription of "In God We Trust" on currency does not substantially burden the plaintiffs' exercise of religion); *New Doe Child No. 1 v. United States*, 901 F.3d 1015, 1025 (8th Cir. 2018) ("While cash may be a convenient means of participating in the economy, there are many alternatives that would not violate the Plaintiffs' stated beliefs …We are aware of no case that has found a substantial burden on similar facts."); *Mayle v. United States*, 891 F.3d 680, 686-87 (7th Cir. 2018) (holding that "because using money

---

[2] It should be noted that Plaintiff was also a plaintiff in this Sixth Circuit case.

is not a religious exercise, and the motto has secular as well as religious significance, [Plaintiff] has not plausibly alleged that the motto's placement on currency increases the burden on practicing [his religion]"); *Newdow v. Lefevre*, 598 F.3d 638, 645-46 (9th Cir. 2010) (finding the motto on U.S. currency did not violate RFRA).

Plaintiff tries to distinguish the above cases on the basis that "[n]o prior case has addressed Plaintiff's unique Jewish religious objections or the specific, unavoidable burdens pled here." [DE 36 at 4]. According to Plaintiff, "[u]nlike plaintiffs in Newdow-line cases who asserted only symbolic harms, Plaintiff demonstrates coercion and exclusion from civic and economic life—precisely the type of substantial burden RFRA was enacted to prevent." *Id.* However, the Court finds that Plaintiff's attempt to distinguish the cases on this issue fails and that he has not sufficiently pled an RFRA violation.

Plaintiff's allegations in the FAC regarding substantial burden are problematic. Many of them are speculative. For example, Plaintiff makes allegations about how his inability to use currency and coins will affect his "future children," who do not yet exist. He also alleges that he cannot hold cash for natural disasters when electronic systems fail, which an issue that is rare and unlikely to arise. Similarly, he is concerned about not being able to post bail, but there is no allegation that posting bail will become necessary or that all jurisdictions disallow cashless bail. Plaintiff asserts that he cannot hold certain employment or own retail businesses without explaining why he would mandatorily have to handle cash in those positions.

Other allegations, even in the aggregate, do not constitute a substantial burden to Plaintiff. He claims that his inability to use cash impairs his participation in activities such as donating to the needy, parking in certain lots, utilizing certain cash-only businesses, and accepting small political contributions in cash, but these types of activities are rather trivial. Further, everyday life

in the United States has become increasingly cashless. In other words, Plaintiff can avoid many of these situations without any difficulty. Plaintiff alleges that he could not use $2,000 in cash he received for his wedding, but he does not explain why he could not simply deposit the money with the bank and then use alternative payment methods. Rather, he conclusory claims that he was forced to donate the money by the tenets of his religion. The FAC alleges that Plaintiff has had to pay significant added surcharges for using credit cards, but this does not take into account his ability to use debit cards. Plaintiff also alleges he must leave his wallet outside public bathrooms or wrap his cash in plastic bags to protect currency from dirty bathrooms; however, this allegation is in contradiction to the other allegations in the FAC that Plaintiff cannot even use or carry any currency.

In sum, Plaintiff's attempt to distinguish the existing jurisprudence as to whether "In God We Trust" violates the RFRA fails as he has not established that the Government has substantially burdened his exercise of religion. The burdens alleged in the FAC are speculative, often avoidable, and generally negligible in scope.

Next, Plaintiff relies on two cases in his opposition to the Motion to Dismiss—*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972). First, the Supreme Court in *Hobby Lobby* held that "a federal regulation's restriction on the activities of a for-profit closely held corporation must comply with RFRA" and that the "HHS contraceptive mandate 'substantially burden[s]' the exercise of religion." 573 U.S. at 719 (citing 42 U.S.C. § 2000bb–1(a)). *Hobby Lobby* is easily distinguishable from the case at hand as it involved a public corporation that had to pay millions of dollars if it chose not to comply with a federal contraceptive mandate.[3] Next, *Yoder*, 406 U.S. 205, is a case based on the Free Exercise

---

[3] "If the owners comply with the HHS mandate, they believe they will be facilitating abortions, and if they do not comply, they will pay a very heavy price—as much as $1.3 million per day, or about $475 million per year, in the

Clause of the First Amendment and not the RFRA. The case further involves a situation where plaintiffs had to comply with the law or face criminal sanctions.[4] Thus, it too is easily distinguishable from the case at hand. Here, Plaintiff has not alleged that he faces a substantial burden analogous to the burdens faced in the cases upon which he relies.

Finally, Plaintiff claims in his papers that less restrictive means exist for furthering any compelling governmental interest. [DE 36 at 7]. These alleged less restrictive means include reprinting all cash and coins to change or eliminate the current motto, "[o]ffering secular or neutral currency designs in a novel, beautiful direction, on more durable full-color plastic," or providing "digital legal tender alternatives." *Id.* The FAC also alleges, "[l]ess restrictive alternatives include: hyphenated form ('In G-d We Trust'), secular alternatives ('In Good We Trust'), or complete redesign with new civic religious motto and currency name." [FAC at 26]. Obviously, rehauling all U.S. currency and coins is not as simple of an endeavor as Plaintiff argues. In fact, the 2025 currency operating budget new currency alone is $1,040.0 million. *See* How Much Does It Cost to Produce Currency and Coin, https://www.federalreserve.gov/faqs/currency_12771.htm (last visited Nov. 18, 2025). Further, to the extent Plaintiff requests digital legal tender alternatives in the FAC, several options other than the use of paper money do, in fact, exist already. Based on the foregoing, Count I is due to be denied.[5]

---

case of one of the companies. If these consequences do not amount to a substantial burden, it is hard to see what would." *Hobby Lobby*, 573 U.S. at 691.

[4] "The impact of the compulsory-attendance law on respondents' practice of the Amish religion is not only severe, but inescapable, for the Wisconsin law affirmatively compels them, under threat of criminal sanction, to perform acts undeniably at odds with fundamental tenets of their religious beliefs." *Yoder*, 406 U.S. at 218.

[5] The Court will not consider Defendants' res judicata argument at this time, as it finds that dismissal of Count I is warranted without reaching that argument.

b. Count II

Count II of the FAC alleges a violation of the Free Exercise Clause against Defendants Treasury Secretary Bessent, Federal Reserve Chair Powell, and the United States. In addition to the allegations in the FAC detailed above, Plaintiff alleges that "[g]overnment actions prevent Plaintiff from engaging in essential civic and economic life due to religious refusal to desecrate sacred names" and the "law indirectly coerces behavior conflicting with religious observance." [FAC at 26].

"The Free Exercise Clause of the First Amendment protects against 'indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.'" *Carson ex rel. O. C. v. Makin*, 142 S. Ct. 1987, 1996 (2022) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)). "[A] plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421–22 (2022) (quoting *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 879–81 (1990)). According to the Eleventh Circuit,

> To plead a claim for relief under the Free Exercise Clauses of the U.S. and Florida Constitutions, a plaintiff "must allege that the government has impermissibly burdened one of [its] 'sincerely held religious beliefs.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007). This belief must be "rooted in religion," since "personal preferences and secular beliefs do not warrant the protection of the Free Exercise Clause." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1256 (11th Cir. 2012) (quoting *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829, 833, 109 S. Ct. 1514, 103 L.Ed. 2d 914 (1989)). We have read this pleading requirement as having two components: "(1) the plaintiff holds a belief, not a preference, that is sincerely held and religious in nature, not merely secular; and (2) the law at issue in some way impacts the plaintiff's ability to either hold that belief or act pursuant to that belief." *Id.* at 1256–57[.]

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1246 (11th Cir. 2019). "[N]eutral, generally applicable laws that incidentally burden the exercise of religion

9

usually do not violate the Free Exercise Clause of the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 356–57 (2015).

Here, the Court has again the factual allegations contained within the FAC. The Court finds that the FAC insufficiently alleges that Defendants Treasury Secretary Bessent, Federal Reserve Chair Powell, and the United States have burdened Plaintiff's sincere religious practice pursuant to a policy that is neither neutral nor generally applicable by printing of "In God We Trust" on American currency and coins. For the same reasons discussed above, Plaintiff has not alleged that Defendants' policy is neither neutral nor generally applicable.

    c.   Count III

Count III of the FAC alleges a violation of the Establishment Clause against Defendants Congress and the United States. In the FAC, Plaintiff alleges that the "mandated use of the phrase 'In G-d We trust' as the national motto constitutes an endorsement of a particular religious viewpoint and improperly positions the Government as a religious authority." [FAC at 26]. Further, this "violates the Establishment Clause of the First Amendment and does so in a particularly egregious manner with respect to Jewish Hasmonean and Maccabean religious traditions and obligations, which strongly oppose the casual or superfluous use of G-d's sacred Name in secular contexts." *Id.* The FAC also explicitly relies on the test established in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), which is no longer good law. *Id.* It alleges that the use of "In G-d We Trust" alienates not only Jews, but also agnostics, atheists, and polytheists. *Id.* at 27. The FAC suggests that the Government transition to a "pluralistic civic motto and currency title." *Id.*

The Establishment Clause provides that Government "shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause "mandates governmental neutrality between religion and religion, and between religion and nonreligion."

*Jarrad v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1317 (11th Cir. 2024) (quoting *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005)). The Establishment Clause must be interpreted by "'reference to historical practices and understandings.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 510 (2022) (citing *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 566 (2014)).

The Eighth Circuit has determined that putting "In God We Trust" on money does not violate the Establishment Clause and has provided a lengthy analysis of the relevant historical practices and understandings. *See New Doe Child #1*, 901 F.3d at 1024. This Court strongly agrees with the Eighth Circuit's analysis. Further, the only case cited in Plaintiff's Response is *American Council of the Blind v. Paulson,* 525 F.3d 1256 (D.C. Cir. 2008). However, *Paulson* is easily distinguishable as it is a case involving Section 504 of the Rehabilitation Act. In other words, Defendants have cited a strongly persuasive case out of the Eighth Circuit, and Plaintiff has cited no case that actually supports his position. Count III is due to be denied on this basis alone.

Moreover, Plaintiff argues in his Response that "[t]he statute mandating the motto is not neutral. It privileges monotheistic traditions that permit willy-nilly unrestricted use and reproductive printing of the Divine Name without custodial care and end-of-life restrictions while disadvantaging Jewish and any other religious minorities who forbid its casual inscription or destruction and require custodial care and end-of-life religious burial." [DE 36 at 10]. Thus, the Government "places itself in the role of theological arbiter, endorsing certain religious understandings over others." *Id.* However, in the FAC itself, Plaintiff alleges as follows:

> While it is very common for American Jews to hyphenate the Name of G-d in their own writing practices, it is not common yet for American Jews to realize the logical extension is a need to protect United States currency from bathroom and end-of-life careless destruction. The Plaintiff acknowledges his practices with currency are very rare currently among American Jews, possibly wholly singular ….

11

[FAC at 8–9]. Plaintiff is therefore taking contradictory positions, claiming that the use of the motto harms Jewish people and other undefined religious minorities in his Response, while acknowledging in the FAC that he may be the only person who is actually directly affected by the motto. Plaintiff has not sufficiently alleged that the motto on money violates the Establishment Clause. Further, the cases cited by Defendants support this finding. Additionally, Plaintiff lists less restrictive, neutral alternatives, downplaying the logistical difficulty of his proposals. *Id.* at 11–12. Count III is due to be dismissed.

    d.  Count IV

Count IV of the FAC alleges a violation of the Takings Clause against Defendants Federal Reserve Chair Powell and the United States. The FAC alleges that Plaintiff has been effectively deprived of the use of his property without just compensation. [FAC at 28]. It cites as concrete examples that Plaintiff could not use over $2,000 in cash wedding gifts and, due to his religious beliefs, had to donate the funds to a charity. *Id.* The FAC also asserts that the religious motto on call currency "results in a differential and burdensome impairment of Plaintiff's property rights, effectively stripping his cash assets of their utility without offering any compensation or accommodation in return." *Id.* According to the FAC, Plaintiff wishes to get remarried and does not want this issue to arise yet again. *Id.* at 28–29.

The Takings Clause of the Fifth Amendment states: "nor shall private property be taken for public use, without just compensation." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024). "Three major points about this text and how it fits into the Constitution's overall structure stand out: (1) the Takings Clause guarantees 'just compensation'—a monetary remedy—when the government takes private property; (2) the Takings Clause is 'self-executing,' *Knick v. Township of Scott*, 588 U.S. 180, 194 (2019); and (3) the Takings Clause is one of only two constitutional guarantees that

provides its own remedy. Together, these three points lead to the conclusion that the Constitution automatically provides Americans with the federal right to sue for 'just compensation.'" *Fulton v. Fulton Cnty. Bd. of Commissioners*, 148 F.4th 1224, 1238 (11th Cir. 2025).

Here, the FAC does not allege that the Government has directly taken any private property from Plaintiff. Thus, it does not state a claim under the Takings Clause. And, Plaintiff has not provided any caselaw whatsoever that supports his argument that the Government effectively deprived him of money by placing the religious motto on it.

    e. <u>Counts V–VII</u>

The FAC alleges the "Right to Petition Government for Redress and Trust That They'll Actually Respond with Religious Protections" against Defendant Congress (Count V), "Reasonable Pro Se Fee Request" against all Defendants (Count VI), and "Penny Minting Ban and Currency Overhaul Under RFRA" against Defendants Treasury Secretary Bessent and Congress (Count VII).

None of these counts are rooted in any actual law. To the extent Plaintiff seeks attorney's fees, that is not a proper freestanding count of a complaint. Counts V through VII are due to be dismissed.

### III. **Motion to Amend**

Federal Rule of Civil Procedure 15 provides that "[t]he court should freely give leave when justice so requires." *Id.* "A district court need not ... allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001). "Leave to amend a complaint is futile when the complaint as amended would still be

properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (citing *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1263 (11th Cir. 2004)).

Here, the Court has reviewed the proposed Second Amended Complaint ("SAC") [DE 35-1] and finds that amendment in the manner in which Plaintiff suggests would be futile. The proposed SAC does not resolve the various issues noted above. Further, Plaintiff wishes to add President Trump as a defendant due to his "two August 25, 2025 Executive orders pressuring states and forcing Washington DC…to turn against cashless bail." [DE 35 at 2]. This is problematic for multiple reasons, including, but not limited to, standing issues and presidential immunity issues. Plaintiff also seeks to add to his complaint various irrelevant allegations which add nothing to his claims. [DE 35 at 3–4]. And, to the extent Plaintiff wishes to add an Eighth Amendment claim, he should be prepared to support such a claim with applicable law.

Despite the deficiencies in the proposed SAC, the Court will, however, provide Plaintiff one more chance to amend his complaint in compliance with this Order. This is because Plaintiff has only had one opportunity to amend thus far, and that amendment was provided for by the Rules without leave of Court. While the Court is allowing Plaintiff to amend his complaint, **Plaintiff is hereby put on notice that this will be his last opportunity to correct the deficiencies in his complaint.**

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Amended Complaint [DE 27] is **GRANTED IN PART AND DENIED IN PART**.

2. Plaintiff's Motion to Amend [DE 35] is **DENIED**.

3. The FAC is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file a Second Amended Complaint (and not the version at DE 35-1) on or before **December 5, 2025**, making specific allegations that are in full compliance with the applicable case law and the Federal Rules of Civil Procedure.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of November 2025.

WILLIAM MATTHEWMAN
Chief United States Magistrate Judge